[No. B181184. Second Dist., Div. Four. July 25, 2006.]

GABRIEL P., Plaintiff and Respondent, v.
SUEDI D., Defendant and Appellant.

COUNSEL

Law Offices of Marjorie G. Fuller and Marjorie G. Fuller for Defendant and Appellant.

McMillan & Tkach and John A. Tkach for Plaintiff and Respondent.

OPINION

**MANELLA, J.**—Appellant Suedi D. appeals from a judgment of paternity determining Gabriel P. to be the biological and presumed father of Seanna D. We reverse and remand for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. *Underlying Events*[1]

Suedi and Gabriel first met at an entertainment club when Suedi was approximately 15 years old and Gabriel was approximately 20 years old.[2] Gabriel then believed that Suedi was at least 21. Both were unwed.

Suedi and Gabriel began to have sexual relations, and at some point Seanna was conceived. During this period, Suedi also had sexual relations

---

[1] The following facts are based on the trial court's findings after trial, which are unchallenged on appeal.

[2] We refer to the parties by their self-designated first names "to humanize a decision resolving personal legal issues which seriously affect their lives," and to make our opinion easier to understand. (*In re Marriage of Smith* (1990) 225 Cal.App.3d 469, 475–476, fn. 1 [274 Cal.Rptr. 911].)

with Anthony O., who was then approximately 29 years old and also unwed. Suedi led each man to believe that he was Seanna's father. Suedi testified at trial that Gabriel seemed reluctant to enter into marriage, and thus she also pursued a relationship with Anthony.

Seanna was born in late February 2001. Just prior to Seanna's birth, Anthony effectively took up residence in the home of Suedi's mother, where Suedi lived. He accompanied Suedi to the hospital where Seanna was born, identified himself as Seanna's father, and was present during Seanna's birth. Shortly after the birth, Anthony executed a voluntary declaration of paternity. When the hospital lost this document, he executed a second voluntary declaration.

Although Suedi told Gabriel at some point that she was seeing someone else, he was unaware that Anthony and Suedi had been living together in the home of Suedi's mother. Gabriel knew about Suedi's due date and phoned her, but received no answer. He and members of his family then went to the hospital. To prevent Gabriel from encountering Anthony, Suedi arranged for others to tell Gabriel that Suedi did not want to see him and that he would not be allowed to see Seanna.

After Seanna's birth, Gabriel was not welcome in the home of Suedi's mother, where Suedi lived with Seanna and Anthony, and he made no visits there. Suedi's mother disliked Gabriel because he had not married Suedi while she was pregnant. Suedi occasionally brought Seanna to see Gabriel, and during these visits, Gabriel acknowledged his paternity and held out Seanna as his child. When Suedi stopped these visits, Gabriel was precluded from seeing Seanna.

When Seanna was about three months old, Suedi told Gabriel that he was not Seanna's father, and stated—falsely—that she had test results to prove it. She asked him not to contact her or Seanna any further. He followed her wishes, but repeatedly requested a copy of the test results to achieve "closure."

In December 2001, when Seanna was 10 months old, paternity testing finally occurred at Anthony's request. The test indicated that Anthony was not Seanna's father. This was the first point at which he knew this fact.

B. *Gabriel's Paternity Action*

The following month Gabriel initiated the underlying paternity action. He requested genetic testing and sought orders regarding child support and attorney fees.

On June 7, 2002, Commissioner James Endman denied Gabriel's request for genetic testing. The matter was subsequently transferred to Commissioner Ann Dobbs for trial. On August 20, 2002, Commissioner Dobbs ordered genetic testing sua sponte. This testing established that the probability that Gabriel was Seanna's biological father was greater than 99.99 percent.

Suedi and Seanna moved into a new residence with Anthony in February 2003. Suedi and Anthony married in June 2003 and had a child together.

A bench trial began before Commissioner Dobbs on June 5, 2003. Suedi, Gabriel, and Anthony testified during the trial. Following trial, Commissioner Dobbs issued a detailed statement of decision. Although Gabriel did not meet the statutory requirements for "presumed father" status under the Uniform Parentage Act (Act) (Fam. Code, § 7600 et seq.),[3] she concluded that Gabriel was eligible for this status, citing *Adoption of Kelsey S.* (1992) 1 Cal.4th 816 [4 Cal.Rptr.2d 615, 823 P.2d 1216] (*Kelsey S.*). In addition, she set aside Anthony's voluntary declaration of paternity, declined to determine whether Anthony was the presumed father of Seanna on any other basis, and ruled that Gabriel was Seanna's biological and presumed father.

Commissioner Dobbs ordered Suedi and Gabriel to engage in counseling, as preparation for visitation between Gabriel and Seanna, and bifurcated the issues of child support and attorney fees. Judgment was entered accordingly.

## DISCUSSION

Suedi contends that the trial court erred in (1) determining that Gabriel established that he was Seanna's presumed father, (2) ordering genetic testing and admitting the test results at trial, and (3) declining to determine whether Anthony is Seanna's presumed father.

### A. *Standard of Review*

On appeal, Suedi does not challenge the trial court's factual findings. Accordingly, her contentions present only questions of law that we resolve de novo. (*Enterprise Ins. Co. v. Mulleague* (1987) 196 Cal.App.3d 528, 540 [241 Cal.Rptr. 846].)

### B. *Governing Law*

■ The Act provides the statutory framework by which California courts make paternity determinations. (*Dawn D. v. Superior Court* (1998) 17 Cal.4th

---

[3] All further statutory references are to the Family Code, unless otherwise indicated.

932, 937 [72 Cal.Rptr.2d 871, 952 P.2d 1139]; § 7610, subd. (b).) It enumerates a number of presumptions that identify circumstances under which a man may be declared a child's father. (*Francisco G. v. Superior Court* (2001) 91 Cal.App.4th 586, 595 [110 Cal.Rptr.2d 679].)

■ In light of this statutory scheme, California law distinguishes "alleged," "biological," and "presumed" fathers. (*Francisco G. v. Superior Court, supra*, 91 Cal.App.4th at p. 595.) "A man who may be the father of a child, but whose biological paternity has not been established, or, in the alternative, has not achieved presumed father status, is an 'alleged' father. [Citation.]" (*In re Zacharia D.* (1993) 6 Cal.4th 435, 449, fn. 15 [24 Cal.Rptr.2d 751, 862 P.2d 751].) Furthermore, "[a] biological or natural father is one whose biological paternity has been established, but who has not achieved presumed father status," as defined in the Act. (*In re Zacharia D.*, at p. 449, fn. 15.) Generally, to become a presumed father, a man must fall within the categories recognized under the Act. (*In re Zacharia D.*, at pp. 448–449; *Francisco G. v. Superior Court, supra*, 91 Cal.App.4th at p. 595.)

■ Presumed fathers are accorded greater rights than alleged or biological fathers. (*In re Zacharia D., supra*, at pp. 448–449; *Francisco G. v. Superior Court, supra*, 91 Cal.App.4th at p. 595.) Alleged fathers have only limited rights to notice of proceedings bearing on the paternity of a child. (See *Francisco G. v. Superior Court, supra*, 91 Cal.App.4th at p. 596.) Although a biological father's parental relationship with a child is not terminated when another man is declared the child's presumed father, only the presumed father is entitled to custody of the child. (*In re Jesusa V.* (2004) 32 Cal.4th 588, 610 [10 Cal.Rptr.3d 205, 85 P.3d 2].)

■ Section 7611 sets out a number of ways a father can obtain "presumed father" status. (*In re Jerry P.* (2002) 95 Cal.App.4th 793, 802 [116 Cal.Rptr.2d 123].) It establishes several rebuttable presumptions under which a man may achieve this status by marrying or attempting to marry the child's mother, or by publicly acknowledging paternity and receiving the child into his home. (*Id.* at pp. 802–803; § 7611, subds. (b), (c).)

■ Section 7611 also recognizes bases for determining paternity that are stated outside the Act. These include a completed voluntary declaration of paternity (§ 7570 et seq.), and the so-called conclusive presumption of paternity (*Dawn D. v. Superior Court, supra*, 17 Cal.4th at p. 935; § 7540), which authorizes a determination that a mother's husband is her child's father, provided the mother and her husband were married and cohabiting when the child was conceived.

■ As our Supreme Court explained in *In re Jesusa V., supra*, 32 Cal.4th at page 603, "[a]lthough more than one individual may fulfill the statutory

criteria that give rise to a presumption of paternity, 'there can be only one presumed father.' [Citations.]" The procedure for reconciling competing presumptions is stated in section 7612, which provides: "(a) . . . a presumption under Section 7611 is a rebuttable presumption affecting the burden of proof and may be rebutted in an appropriate action only by clear and convincing evidence. [¶] (b) If two or more presumptions arise under Section 7611 which conflict with each other, the presumption which on the facts is founded on the weightier considerations of policy and logic controls. [¶] (c) The presumption under Section 7611 is rebutted by a judgment establishing paternity of the child by another man." (See *In re Jesusa V., supra,* 32 Cal.4th at p. 603.)

■ The case before us implicates at least two rebuttable presumptions established by section 7611. Under subdivision (c)(1) (the subdivision (c)(1) presumption), a man is presumed to be the father of a child if he marries the child's natural mother after the child is born, and his name is on the child's birth certificate. Furthermore, under subdivision (d) (the subdivision (d) presumption), a man is presumed to be the father of a child if "he receives the child into his home and openly holds out the child as his natural child." The record unequivocally discloses that Anthony has satisfied the factual predicates underlying these two presumptions.

■ The case before us also implicates the statutory provisions governing Anthony's voluntary declaration of paternity. Under these provisions, a completed voluntary declaration of paternity "ha[s] the same force and effect as a judgment for paternity issued by a court of competent jurisdiction" (§ 7573), and as such, it can be asserted to rebut presumptions arising under section 7611 (§ 7612, subd. (c)). The trial court may set aside a voluntary declaration of paternity when genetic tests show that the declarant is not the father. (§ 7555, subd. (b)(1).)

### C. *Gabriel's Standing to Seek "Presumed Father" Status*

Suedi contends that the trial court erred in concluding that Gabriel was entitled to establish that he is Seanna's presumed father, even though Gabriel did not meet the factual requirements for "presumed father" status under section 7611.

■ The issue presented, precisely stated, concerns Gabriel's standing to bring his paternity action. As we have explained (see pt. B., *ante*), Anthony meets the criteria for a presumed father through marriage. However, the Act restricts standing to challenge a husband's status as presumed father—insofar as this arises from the presumptions involving marriage—to the child, the child's natural mother, and a presumed father through marriage. (*Dawn D. v.*

*Superior Court, supra,* 17 Cal.4th at pp. 937–938; § 7630, subd. (a).)[4] Because Gabriel is not a presumed father through marriage under the Act, he lacks statutory standing to displace Anthony as presumed father, insofar as this status stems from the first presumption. (*Dawn D. v. Superior Court, supra,* 17 Cal.4th at pp. 937–938, fn. 5.)

Here, the trial court found that Gabriel did not satisfy the factual predicates for the status of presumed father. Nonetheless, citing *Kelsey S., supra,* 1 Cal.4th 816, the trial court concluded that Gabriel was entitled to establish his paternity because Suedi had precluded him from becoming a presumed father. We agree with the trial court on this matter.

In *Kelsey S., supra,* 1 Cal.4th at pages 821 to 823, a child was born to unwed parents. Aware that the mother planned to place the child for adoption, the purported father objected and initiated a paternity action under the Act two days after the child was born. (1 Cal.4th at p. 822.) The prospective adoptive parents also filed an adoption petition. (*Ibid.*) The trial court ruled that the purported father was not a "presumed father," and thus his objection could not bar the adoption, given that the applicable statutes accorded only presumed fathers the right to impede adoptions by withholding their consent. (*Id.* at pp. 823–824.)

The Supreme Court concluded this was error. (*Kelsey S., supra,* 1 Cal.4th at p. 852.) It noted that the mother had prevented the purported father from satisfying the factual predicates needed for "presumed father" status: in particular, although he had publicly acknowledged the child, she had barred him from "physically receiv[ing] the child into his home." (*Id.* at p. 825.) The court held that the Act and adoption statutes infringed the biological father's federal constitutional rights, insofar as these statutes allowed the mother unilaterally to preclude him from becoming the presumed father, and thereby deny him the right to object to the adoption.

The holding in *Kelsey S.* was applied to a factual situation similar to the instant case in *Michael M. v. Giovanna F.* (1992) 5 Cal.App.4th 1272 [7 Cal.Rptr.2d 460] (*Michael M.*). In *Michael M.,* the plaintiff filed a complaint for a declaration of paternity, alleging the following facts: He had cohabited

---

[4] Section 7630 provides in pertinent part: "(a) A child, the child's natural mother, [or] a man presumed to be the child's father under subdivision (a), (b), or (c) of Section 7611, . . . may bring an action as follows: [¶] (1) At any time for the purpose of declaring the existence of the father and child relationship presumed under subdivision (a), (b), or (c) of Section 7611. [¶] (2) For the purpose of declaring the nonexistence of the father and child relationship presumed under subdivision (a), (b), or (c) of Section 7611 only if the action is brought within a reasonable time after obtaining knowledge of relevant facts. After the presumption has been rebutted, paternity of the child by another man may be determined in the same action, if he has been made a party."

with a woman while both were single, and they became engaged to be married. (*Id.* at p. 1277.) During their engagement, he learned from her that she had become pregnant. (*Ibid.*) She then broke off the engagement and married someone else before the child was born. (*Ibid.*) Soon after the child's birth, the plaintiff offered to support the child if he was its father, and requested information that could establish his paternity. (*Ibid.*) The woman and her husband declined this request and denied him contact with the child. (*Ibid.*) Thereafter, the plaintiff promptly filed his paternity action. (*Ibid.*)

After the trial court sustained a demurrer to the complaint without leave to amend, the appellate court reversed. It noted that on the facts alleged, the Act accorded the woman's husband the status of presumed father, but denied the plaintiff standing to establish his paternity, even though he had taken prompt action to do so. (*Michael M., supra,* 5 Cal.App.4th at pp. 1278, 1281.) Citing *Kelsey S.,* the court reasoned that (1) under the circumstances alleged, the plaintiff had a constitutionally protected interest in the opportunity to develop a relationship with the child, and (2) this interest was not outweighed by the state's interest in preserving families—as expressed, for example, in the conclusive presumption of paternity—because no "marriage family" had existed when the child was conceived. (*Id.* at pp. 1282–1285.) It thus concluded that the plaintiff must be permitted standing under the Act to establish his paternity, and to rebut the husband's competing presumption of paternity. (*Id.* at pp. 1278, 1285.)

In our view, *Michael M.* is dispositive on the question before us. The trial court found that Gabriel had acted as promptly as was reasonably possible to establish that he is Seanna's father, and that Suedi's conduct had unilaterally precluded Gabriel from meeting the statutory requirements for the status of presumed father. Furthermore, as in *Michael M.,* Anthony married Suedi after Seanna was conceived. Under *Michael M.,* Gabriel has standing under the Act to establish his paternity. (See also *Fuss v. Superior Court* (1991) 228 Cal.App.3d 556, 559–563 [279 Cal.Rptr. 46] [a man has standing to establish his paternity of a child conceived before—but born during—the mother's marriage to another man].)

Suedi disagrees, citing *Dawn D. v. Superior Court, supra,* 17 Cal.4th 932. However, this case is distinguishable. In *Dawn D.,* a married woman separated from her husband and began living with Jerry K. Shortly thereafter, she became pregnant. (*Id.* at p. 936.) She then returned to her husband and gave birth to the child, who lived with them. (*Ibid.*) When Jerry filed a paternity action and requested genetic testing, the woman sought judgment on the pleadings, contending that Jerry had no valid claim to be the child's father. (*Ibid.*) The trial court denied the motion, relying on *Kelsey S.* and *Michael M.* (*Ibid.*)

The Supreme Court reversed. (*Dawn D., supra*, 17 Cal.4th at p. 947.) It explained that a man's interest in a child displaces the Act's standing requirements only when that interest, given a " 'careful description' " in "concrete and particularized" terms, is constitutionally protected. (*Id.* at pp. 939–942.) Applying this test, it concluded that Jerry's asserted interest—namely, "his interest in establishing a relationship with his child *born to woman married to another man at the time of the child's conception and birth*"—was not constitutionally protected. (17 Cal.4th at pp. 941–942, italics added.)

*Dawn D.* thus addresses an interest materially different from the interests at stake in *Michael M.* and the case before us. Indeed, the *Dawn D.* court expressly distinguished *Kelsey S.* as an adoption case dealing with "unwed parents," rather than a child "born into a validly existing marital family unit." (*Dawn D., supra*, 17 Cal.4th at p. 943.) While the court mentioned *Michael M.* in passing, it neither criticized nor discussed it. (17 Cal.4th at p. 936.) *Michael M.* too, however, like *Kelsey S.* and the instant case, involved a child conceived when no "marriage family" existed.[5]

### D. *Genetic Testing*

Suedi contends that the trial court erred in ordering genetic testing and admitting the results of these tests to set aside Anthony's voluntary declaration of paternity. Citing section 7541(b), she argues that only presumed fathers may request genetic testing.[6] In addition, she argues that principles of collateral estoppel barred the trial court from ordering testing and admitting the results after Commissioner Endman had denied Gabriel's motion for

---

[5] Citing *Rodney F. v. Karen M.* (1998) 61 Cal.App.4th 233 [71 Cal.Rptr.2d 399] and *Lisa I. v. Superior Court* (2005) 133 Cal.App.4th 605 [34 Cal.Rptr.3d 927], Suedi also contends that *Kelsey S.* is inapplicable because Suedi and Anthony form the only family that Suedi has known. However, the facts and outcome in *Rodney F.* are materially similar to those in *Dawn D.*: in both cases, the court rejected an attempt by a man to achieve "presumed father" status regarding a child conceived and born while the mother was married to another man. (*Rodney F. v. Karen M., supra*, 61 Cal.App.4th at pp. 236–237, 242.)

The unusual situation in *Lisa I.* is also distinguishable from the facts before us. There, the trial court ruled that a man had standing to establish his paternity of a child conceived during the mother's marriage to another man, but born after the dissolution of this marriage. (*Lisa I. v. Superior Court, supra*, 133 Cal.App.4th at pp. 610–611.) The appellate court reversed, reasoning that the situation before it fell under *Dawn D.*, because the child's divorced parents intended to raise it jointly with their two other children, and thus there was a cognizable "existing relationship"—albeit not a "fully intact family"—involving the parents and the three children. (*Id.* at pp. 616–619.)

[6] Subdivision (b) of section 7541 provides: "The notice of motion for blood tests under this section may be filed not later than two years from the child's date of birth by the husband, or for the purposes of establishing paternity by the presumed father or the child through or by the child's guardian ad litem. As used in this subdivision, 'presumed father' has the meaning given in Sections 7611 and 7612."

testing. We disagree. As explained below, the results of genetic testing were relevant to resolve the issues presented by Anthony's voluntary declaration of paternity; thus the trial court was authorized to order the tests on its own motion.

For the reasons indicated above (see pt. C., *ante*), Gabriel is entitled to an opportunity to establish that he is Seanna's "presumed father," notwithstanding the competing presumptions that may support Anthony's candidacy for this status. Gabriel's action thus necessarily implicates Anthony's voluntary declaration of paternity, which functions as a judgment of paternity. (§§ 7573, 7612, subd. (c).)

■ Section 7551 provides that "[i]n a civil action or proceeding in which paternity is a relevant fact, the court may upon its own initiative . . . order the mother, child, and alleged father to submit to genetic tests." Here, Anthony's biological paternity is relevant to the enforceability of his voluntary declaration. Under subdivision (b)(1) of section 7575, the trial court may set aside a voluntary declaration of paternity, provided that tests conducted "pursuant to Chapter 2 (commencing with Section 7550)" show that the declarant is not the father. As our Supreme Court observed in *In re Nicholas H.* (2002) 28 Cal.4th 56, 63–64 [120 Cal.Rptr.2d 146, 46 P.3d 932], "for persons who are presumed fathers under section 7611 by virtue of a voluntary declaration of paternity pursuant to section 7573, the Legislature permits but does not require that blood test evidence may be considered to extinguish such a person's presumed paternity."

In sum, the trial court properly ordered testing on its own motion and admitted the results to resolve whether Anthony's voluntary declaration should be set aside.

E. *Failure to Address Anthony's Status as Presumed Father*

Finally, Suedi contends that the trial court improperly rejected Anthony's claim to be Seanna's presumed father. She argues that the trial court erred in setting aside Anthony's voluntary declaration of paternity, and failing to weigh the presumptions supporting Anthony's status as presumed father. We agree.

There is an abuse of discretion when the trial court's action "transgresses the confines of the applicable principles of law." (*Continental Ins. Co. v. Superior Court* (1995) 32 Cal.App.4th 94, 108 [37 Cal.Rptr.2d 843].) "A trial court's exercise of discretion is 'subject to the limitations of the legal principles governing the subject of its action, and subject to reversal on appeal where no reasonable basis for the action is shown.'" (*Ibid.*, quoting

*Nalian Truck Lines, Inc. v. Nakano Warehouse & Transportation Corp.* (1992) 6 Cal.App.4th 1256, 1261 [8 Cal.Rptr.2d 467].)

Here, the trial court set aside Anthony's voluntary declaration because genetic tests showed that Gabriel was Seanna's father, and because it found that Suedi had executed the declaration with the knowledge that Anthony might not be Seanna's biological father. It subsequently declined to address whether Anthony was Seanna's presumed father on any other basis, reasoning that Anthony had not been made a party to the proceeding. It stated: "Procedurally, although [Suedi] has requested the Court make a finding that [Anthony] is Seanna's father, under [sections] 7611(c) and (d), [Anthony] is not a party to this action. Anthony could qualify as a presumed father . . . . [¶] This case is not one in which two men are requesting the court to determine which is the father of the child. This is a case in which [Gabriel] is requesting the court to confirm his parentage and allow him to assert and exercise his parental rights[,] while [Suedi] wants to prevent such confirmation and exercise."

These rulings implicate several provisions governing the exercise of the trial court's discretion in paternity proceedings. Upon receipt of test results indicating that the declarant is not the biological father, the trial court may set aside the declaration, "unless the court determines that denial of the action to set aside the voluntary declaration of paternity is in the best interest of the child" (§ 7575, subd. (b)(1)), after consideration of a set of enumerated factors, including the nature, duration and quality of the declarant's relationship with the child, and his request that the parent-child relationship continue.[7] In addition, the trial court may set aside the declaration pursuant to the discretionary provisions for relief under Code of Civil Procedure section 473, subdivision (b), on the grounds of "mistake, inadvertence, surprise, or excusable neglect." (See § 7575, subd. (c)(1); *Generale Bank Nederland v. Eyes of the Beholder Ltd.* (1998) 61 Cal.App.4th 1384, 1398–1399 [72 Cal.Rptr.2d 188].)

---

[7] The factors enumerated in subdivision (b)(1) of section 7575 are as follows: "(A) The age of the child. [¶] (B) The length of time since the execution of the voluntary declaration of paternity by the man who signed the voluntary declaration. [¶] (C) The nature, duration, and quality of any relationship between the man who signed the voluntary declaration and the child, including the duration and frequency of any time periods during which the child and the man who signed the voluntary declaration resided in the same household or enjoyed a parent-child relationship. [¶] (D) The request of the man who signed the voluntary declaration that the parent-child relationship continue. [¶] (E) Notice by the biological father of the child that he does not oppose preservation of the relationship between the man who signed the voluntary declaration and the child. [¶] (F) The benefit or detriment to the child in establishing the biological parentage of the child. [¶] (G) Whether the conduct of the man who signed the voluntary declaration has impaired the ability to ascertain the identity of, or get support from, the biological father. [¶] (H) Additional factors deemed by the court to be relevant to its determination of the best interest of the child."

Finally, in cases involving competing presumptions under section 7611, the trial court must identify the presumption "which on the facts is founded on the weightier considerations of policy and logic." (§ 7612, subd. (b).) This matter is entrusted to the trial court's discretion. (*In re Jesusa V.*, *supra*, 32 Cal.4th at p. 606.) In making this determination, it is "obliged to weigh all relevant factors—including biology," but the fact of biological paternity is not determinative. (*Id.* at pp. 608–612.)

Here, the trial court set aside Anthony's voluntary declaration and declared Gabriel to be Seanna's presumed father without assessing Anthony's relationship to Seanna or his interests in the voluntary declaration, and without weighing Anthony's status under the subdivisions (c)(1) and (d) presumptions. In setting aside these considerations, the trial court reasoned that Anthony was not a party to the action, and thus it was unnecessary to address his status as presumed father.

This was error. To begin, we conclude that Suedi had standing to claim that Anthony is Seanna's presumed father under the subdivisions (c)(1) and (d) presumptions, even if Anthony was not a party to the action. No court has addressed whether these presumptions may be asserted by a party other than the man who satisfies their factual predicates, and thus we are presented with a question of statutory interpretation. "The objective of statutory interpretation is to ascertain and effectuate legislative intent. To accomplish that objective, courts must look first to the words of the statute, giving effect to their plain meaning." (*In re Jerry R.* (1994) 29 Cal.App.4th 1432, 1437 [35 Cal.Rptr.2d 155].)

Subdivision (a) of section 7630 provides that "the child's natural mother . . . may bring an action as follows: (1) . . . for the purpose of declaring the *existence* of the father and child relationship presumed under subdivision . . . (c) of Section 7611." (Italics added.) Furthermore, subdivision (b) of section 7630 provides that "[a]ny interested party may bring an action . . . for the purpose of determining the *existence* or nonexistence of the father and child relationship presumed under subdivision (d) . . . of Section 7611." (Italics added.) Although these provisions concern standing to initiate a paternity action, they manifest through their plain language the Legislature's intent to permit mothers to assert the presumptions in question.

Additionally, the trial court abused its discretion by setting aside Anthony's voluntary declaration without joining him as a party to the proceedings. Under subdivision (a) of Code of Civil Procedure section 389, "a person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if . . . (2) he claims an interest relating to the subject of the

action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest . . . . If he has not been so joined, the court shall order that he be made a party." Joinder is made upon application of a party, or upon the trial court's own motion. (4 Witkin, Cal. Procedure (4th ed. 1997) Pleading, §§ 172–173, pp. 232–233.)

 Failure to raise joinder before the trial court may result in the waiver of this issue on appeal. (*Jermstad v. McNelis* (1989) 210 Cal.App.3d 528, 538 [258 Cal.Rptr. 519].) However, when the trial court knows that an individual is a necessary party to the action under Code of Civil Procedure section 389, it should order joinder. Thus, in *Tuller v. Superior Court* (1932) 215 Cal. 352, 353–354 [10 P.2d 43], the trial court sustained a demurrer that identified an individual as a necessary party, but refused to join the individual as a party to the action—even though the individual indicated a willingness to become a party—because an amended complaint formally naming the individual as a party was never filed. The Supreme Court reversed, reasoning that because the trial court had recognized that the individual was a necessary party, it should have ordered joinder. (*Id.* at p. 355.)

Here, Anthony is a necessary party to the action under Code of Civil Procedure section 389, subdivision (a)(2)(i), by virtue of his voluntary declaration of paternity. (*County of Los Angeles v. Sheldon P.* (2002) 102 Cal.App.4th 1337, 1345 [126 Cal.Rptr.2d 350] ["the voluntary declarant must be made a party to any proceeding to set a voluntary declaration aside"].) Although neither Gabriel nor Suedi formally requested that Anthony be joined as a party, Anthony appeared during the proceedings, and Suedi argued throughout that Anthony was Seanna's presumed father. The trial court never suggested that Anthony's absence as a party might be relevant to its ruling until it issued its statement of decision, which recognized Anthony's claim as presumed father, but set this claim aside primarily because he was a nonparty. Given the statutory mandates obliging the trial court to assess Anthony's relationship with Seanna before it set aside the voluntary declaration and declared Gabriel to be Seanna's presumed father, the trial court erred in failing to order joinder on its own motion.

In sum, the trial court improperly rejected Anthony's claim to be Seanna's presumed father. Upon remand, Anthony should be made a party to the proceedings, and the trial court must reconsider its decision to set aside his voluntary declaration and evaluate the potentially competing claims of Anthony and Gabriel to be Seanna's presumed father in light of the governing statutes.

## DISPOSITION

The judgment is reversed, and the matter remanded for further proceedings in accordance with this opinion. The parties shall bear their own costs.

Willhite, Acting P. J., and Hastings, J.,* concurred.

---

*Retired Associate Justice of the Court of Appeal, Second Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.