Filed 3/8/13  In re Peter H. CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re PETER H., a Person Coming Under the Juvenile Court Law. | B240913<br>(Los Angeles County<br>Super. Ct. No. CK92117) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES et al.,<br><br>    Plaintiffs and Respondents,<br><br>    v.<br><br>JOAN H.,<br><br>    Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County. Marilyn M. Mordetzky, Juvenile Court Referee.  Affirmed.

Andrea R. St. Julian, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent Los Angeles County Department of Children and Family Services.

Lori A. Fields, under appointment by the Court of Appeal, for Minor and Respondent.

_____

This appeal arises from the dependency proceeding concerning appellant Joan H.'s son, Peter H. The appeal is from an order vacating a finding that Aaron H. is Peter's presumed father, and orders denying Joan H.'s request for a re-hearing on the issue. Peter himself is the respondent, DCFS having taken no position. We affirm.

Facts

This family came to the attention of DCFS in February of 2012, when Peter was 15 years old. He was living with his mother, his 13-year-old half brother, Eric H., and his mother's husband, Christopher H. DCFS became involved after Peter's therapist reported that Peter had spoken of physical violence at the hands of Christopher H. Peter was detained on March 12, after another report of a violent incident in the home.

During the investigation, Mother told DCFS that Peter's biological father, Danny L., was deceased, having died while incarcerated.

Also during the investigation, DCFS spoke to Aaron H., Eric's father. He had lived with Mother from the time Peter was two years old until he was about 10 years old, and he and Peter had frequent weekend and weeknight visits thereafter. DCFS placed Peter with Aaron H., where he has remained throughout the dependency.

On March 14, DCFS filed a Welfare and Institutions Code section 300[1] petition alleging that Christopher H. had physically abused Peter.

Aaron H. was present at the March 15 detention hearing. He asked for presumed father status as to both children, specifying in the Statement Regarding Parentage the years in which he had lived with Peter, the people whom he had told that Peter was his child, the support he had provided for Peter, and similar matters. The court found "[Peter's] biological father is deceased and [Aaron H.] has been acting as the father . . . so the court will make the finding that [Aaron H.] is the presumed father of both Eric and

_____

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

2

Peter."  (See Fam. Code, § 7611 [man presumed to be child's natural father if, inter alia, he receives the child into his home and openly holds out the child as his natural child].)

The court ordered Peter placed with Aaron H.  Eric was not detained, and remained with Mother.  He was later dismissed from the petition.

Mother was not present at the March 15 detention hearing, but was present at a March 29 arraignment hearing.  On that date, she completed a parentage questionnaire, writing that Danny L. was Peter's parent, that he was present at Peter's birth and signed the birth certificate or other paperwork naming him as the father, that he had held himself out as Peter's father, that he had been dead for 10 years, and that she and Danny L. had never married.

On March 29, the court vacated the presumed father finding and ordered DCFS to conduct a due diligence on Danny L.  The court ruled that "Mother indicates, [because] Mother wasn't here at the time that I made paternity findings, that [Danny L.] may be the father of the oldest child.  Department is to do a due diligence on [Danny L.], and the court is going to vacate its finding since it has new information in reference to [Aaron H.] being the presumed father of [Peter]."  Mother objected, stating "I don't know what new information the court has on the record," and that while she was "fine with placement," she considered Aaron H., Peter's father.  In response, the court indicated that the issue could be addressed again after notice had been sent to Danny L., or after diligent search had failed to locate him.

On April 4, 2012, Mother filed a request for rehearing of the ruling vacating the presumed father finding, asserting that there were no new facts on March 29, that Aaron H. was Peter's presumed father under the statutory criteria, and that a family law court

3

had made that finding.[2]  (Mother's counsel has since informed us that this is not the case.) The request was denied on April 24.

For an April 18 hearing, DCFS reported that Mother loved Peter and wanted what was best for him, was "deeply saddened" by the recent events, and understood that she could not handle Peter's needs.  She told DCFS that the placement with Aaron H. was a good idea and wanted Aaron H. to have legal guardianship.

Also for that hearing, DCFS reported on its efforts to find Danny L., reporting that it had been able to ascertain that he had not died during the incarceration Mother mentioned, that it had identified five possible addresses, and, apparently based on information from Peter, a possible Facebook account.  DCFS had, however, been unable to locate Danny L.

The case was called for adjudication and disposition on June 7.  The court began the hearing by saying "The Department has conducted a due diligence on the father for Peter.  That due diligence did reveal some addresses for [Peter's father], so before we can proceed to any type of disposition in this case since paternity is still at issue, the Department is to complete notices to [Danny L.] pursuant to the due diligence.  He is not named in the petition; so the court is prepared to proceed with the 300 petition in reference to the mother."

---

[2] Mother also asserted that the order was vacated so that Aaron H. could obtain public funding for Peter's care, and attached a declaration of counsel to the effect that prior to the March 29 hearing, counsel for Peter informed her that she would seek to vacate the presumed father finding for the sole purpose of ensuring that Aaron H. could get foster care funding and medical benefits for Peter.  The declaration also recounted statements made by Mother's, Peter's and Aaron H.'s lawyers at a chambers conference on the issue.  In her briefs on appeal, Mother makes arguments based on the contention that Aaron H.'s need for funding was the "true reason" for the court's March 29 ruling. We do not consider those arguments.  The true reason for the court's ruling is the reason the court stated, on the record.  We would not look beyond that even to consider comments by the court (see *Whyte v. Schlage Lock Co.* (2002) 101 Cal.App.4th 1443, 1451) and cannot find the "truth" in a hearsay account of the statements of counsel.  We say the same about respondent's speculation, in his brief, about what might have happened in a March 29 chambers conference.

Mother submitted on the social workers' reports, and the petition was sustained under section 300, subdivision (b).[3]

Mother then asked the court to judicially notice a specified family law file, arguing that it included evidence concerning Aaron H.'s presumed father status, which would be relevant at a contested disposition hearing. By this time, Mother had filed a notice of appeal of the March 29 order vacating the presumed father finding, and the court denied the request, noting, inter alia, that the issue of Aaron H.'s presumed father status was on appeal, and thus outside the juvenile court's hands. Mother's counsel then indicated that she had been asking that the matter be reconsidered, and objected to the ruling.

The disposition hearing was held on July 16. Mother's counsel asked the court to reconsider its ruling vacating the presumed father finding and objected to the court's refusal to take additional evidence. DCFS and Peter argued against any reconsideration of the order, and DCFS represented that it was continuing to make efforts to locate Danny L. The court ruled, again, that it could not rule on Aaron H. as presumed father, because the issue was on appeal. The court also rejected the representation of Peter's counsel that Peter had found Danny L. on Facebook, again ruling that the court was not taking evidence on the issue.

The court proceeded to disposition, ordering reunification services for Mother and visits for Danny L., if he was located.

A July 30, 2012 DCFS report references a planned meeting between Peter and Danny L. With that report, DCFS submitted a copy of a signed return receipt, for one of the addresses for Danny L.

On July 30, Mother filed another notice of appeal, describing the orders appealed from by writing that "On March 29, 2012, the court vacated the presumed fatherhood finding for [Aaron H.] . . . . On July 16, 2012, the court declined to take evidence

---

[3] The petition was sustained on one count, "as amended." We do not seem to have a copy of the amended petition in our record, but the omission does not affect our analysis on appeal.

5

regarding the presumed fatherhood of Peter and ordered Peter suitably placed."[4]  The two appeals were consolidated.

Discussion

We begin with an issue raised by respondent:  standing.  Respondent points out that a parent will have standing to appeal a dependency court ruling only where the parent's personal rights are affected by a ruling, and that "To be aggrieved, a party must have a legally cognizable interest that is injuriously affected by the court's decision."  (*In re Barbara R.* (2006) 137 Cal.App.4th 941, 952.)

On first blush, based on those principles, Mother does not seem to have standing. Her contention is that she is affected by the ruling in that her parental rights will not be terminated if Peter is living with a parent, and might be terminated if he is living with a nonrelative.  It is not clear that this interest, although pragmatic, arises to the level of a legally cognizable interest.  A parent's interest in dependency proceedings, once the section 300 petition is sustained, is best legally expressed as an interest in obtaining orders for visits and reunification services and so on, in having her efforts at reunification recognized by the court, and in having the court make findings based on the facts.  (See *In re Devin M.* (1997) 58 Cal.App.4th 1538, 1540.)  We note, too, that while the dependency law requires that courts inquire about alleged or presumed fathers, it does so to protect the alleged father's due process rights, not to block adoption in the event the mother fails to reunify.  (*In re Eric E.* (2006) 137 Cal.App.4th 252, 257; § 316.2.)

However, as Mother argues, the Family Code provides that a mother may initiate a proceeding to determine the existence (or non-existence) of a presumed father and child relationship, and in so doing may assert the presumptions of Family Code section 7611. (Fam. Code, §§ 7630, 7611, 7575; *Gabriel P. v. Suedi D.* (2006) 141 Cal.App.4th 850.) A mother may also appeal from judgments in such a proceeding.  (*Gabriel P. v. Suedi D.,*

---

[4] Mother also wrote, "The court ordered unmonitored visits with Peter's biological father," but makes no argument on appeal concerning that order.

6

*supra,* 141 Cal.App.4th at p. 864.) Further, once a section 300 petition is filed, the juvenile court has exclusive jurisdiction to hear such an action. (§ 316.2, subd. (e).) It is also true that "We liberally construe the issue of standing and resolve doubts in favor of the right to appeal." (*In re Valerie A.* (2007) 152 Cal.App.4th 987, 999.) We are thus persuaded that Mother has standing.

Respondent has another argument, characterized as one concerning standing, which is that Mother has no standing because her parentage questionnaire conclusively determined that Danny L. is Peter's father. Respondent cites in legal support Family Code section 7573, which provides, inter alia, that a completed voluntary declaration of paternity which has been filed with the Department of Child Support Services "shall establish the paternity of a child and shall have the same force and effect as a judgment for paternity issued by a court of competent jurisdiction."

The argument is not really about standing, it is about the merits, but it is in any event unpersuasive, because the record does not include a copy of a voluntary declaration of paternity. Respondent acknowledges this, but points out that the birth certificate itself is in our record, and that it is not signed by Danny L. From this, respondent reasons that when Mother declared that Danny L. signed "the birth certificate, or other paperwork naming him the father," she must have meant that he signed the voluntary declaration.

We think that respondent finds too much in the few facts which were before the court. No voluntary declaration was ever presented to the juvenile court. Mother's statement, even though it was under penalty of perjury, that Danny L. signed paperwork, did not compel the court to find that he was, unrebuttably, Peter's father under Family Code section 7573.

Now, to the merits of Mother's appeal.

*The March 29 order*

Under section 385, "Any order made by the court in the case of any person subject to its jurisdiction may at any time be changed, modified, or set aside, as the judge deems meet and proper." "[T]he juvenile court has the authority pursuant to section 385 to

7

change, modify or set aside its prior orders sua sponte." (*Nickolas F. v. Superior Court* (2006) 144 Cal.App.4th 92, 116.)

We can see no abuse of discretion in the juvenile court's order setting aside the finding that Aaron H. was Peter's presumed father. That is because the court had new information, supplied by Mother, which indicated that Danny L. might be Peter's father. No effort had yet been made to find Danny L. The court did not abuse its discretion by finding that its original order was premature.

Mother cites *Nickolas F., supra,* 144 Cal.App.4th 92 for the proposition that a modification may be made only to prevent a miscarriage of justice. The case holds only that, in addition to the authority of section 385, "the juvenile court has inherent authority, pursuant to California Constitution, article VI, section 1, to reconsider its prior interim orders when necessary to prevent a miscarriage of justice." (*Id*. at p. 99.) At any rate, it is fair to say that when it vacated a potentially erroneous paternity finding, the court did prevent a miscarriage of justice.

As Mother argues, a juvenile court acting under section 385, or its inherent powers, must provide the parties with notice and opportunity to be heard. (*Nickolas F., supra,* 144 Cal.App.4th at p. 98.) Mother did not receive such notice, but we nonetheless see no ground for reversal, because she was not prejudiced. Her argument on prejudice is that, with notice, she could have presented a family law order that Aaron H. was Peter's presumed father. Mother has since learned that there is no such order.

*The court's denial of Mother's requests for re-hearing*

Here, Mother argues that the court abused its discretion on April 25, when it denied her written motion for rehearing of the order vacating the paternity finding, and on June 7, when Mother made what she deems an oral section 388 motion, seeking a change in the March 29 order.

Respondent argues that Mother did not appeal from the June 7 order, noting that in her notice of appeal, she described only March 29 and July 16 orders. It is true that the notice of appeal is limited, but, as Mother points out, a notice of appeal must be liberally construed (*In re Joshua S*. (2007) 41 Cal.4th 261, 272), and when this notice of appeal is

8

construed very liberally indeed, it is sufficient to bring April 25 and June 7 orders to our attention. (See *In re M.C.* (2011) 199 Cal.App.4th 784, 801 [orders entered before the dispositional hearing reviewable on appeal from the dispositional order]; *In re Madison W.* (2006) 141 Cal.App.4th 1447, 1451 [court will construe notice of appeal from order terminating parental rights to encompass denial of section 388 motion].) We do not, however, find grounds for reversal.

As to the denial of Mother's April 4 motion to set aside the March 29 order, Mother's arguments are similar to those she made concerning the March 29 order itself. She contends that Aaron H. is Peter's presumed father as a matter of law, and that she did not receive notice of the March 29 hearing on the order. The first argument ignores the possibility that Danny L. could be conclusively presumed to be Peter's father. The second is unpersuasive for the reasons we have already explained. Mother also makes arguments based on her contention that on March 29, the matter was decided in an unreported chambers conference -- a contention we have rejected.

Nor do we see error in the court's June 7 ruling. Mother argues that the court made its ruling only because it believed that it no longer had jurisdiction over the issue, a belief which Mother argues was erroneous. It is true that in a dependency proceeding, an appeal does not divest a lower court of all jurisdiction. (*In re Nicholas H*. (2003) 112 Cal.App.4th 251, 260.) However, as the court found, the facts concerning Peter's legal parentage had not yet been determined, so that a new hearing on Aaron H.'s status would have been, at best, premature.

Finally, Mother argues that the placement with Aaron H. was in error, not because it was with Aaron H., but because it should have been with Aaron H. as a father, not as a nonrelative caretaker. It will by now be clear that we see no error in the placement decision.

9

Disposition

The orders appealed from are affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


ARMSTRONG, Acting P. J.


We concur:


MOSK, J.


KRIEGLER, J.