Filed 12/31/14  In re Arianna M. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re ARIANNA M., a Person Coming Under the Juvenile Court Law. | |
| | D066178 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Plaintiff and Respondent, | (Super. Ct. No. NJ014780) |
| v. | |
| ARIANNA M., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Kimberlee A. Lagotta, Judge.  Affirmed.

Jamie A. Moran, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel, and Paula J. Roach, Deputy County Counsel, for Plaintiff and Respondent.

Michele Anne Cella, under appointment by the Court of Appeal, for Defendant and Respondent, Breanna K.

Julie E. Braden, under appointment by the Court of Appeal, for Defendant and Respondent, A.M.

Arianna M. appeals the juvenile court's order setting aside its prior judgment of paternity. We affirm the order.

## FACTUAL AND PROCEDURAL BACKGROUND

Arianna M. was detained at the hospital at her birth by the San Diego County Health and Human Services Agency (Agency) as a result of her mother's admitted methamphetamine use. Arianna's mother, Breanna K., and her boyfriend, Alex M., were homeless at the time and had no supplies to care for a newborn. Breanna admitted to a 20-year history of drug abuse. She also had a long history of involvement with child protective services, and as a result, Breanna's two older children (ages one and 10 at the time Arianna was detained) were in a guardianship with Breanna's mother. Arianna and her one year-old brother share the same biological father, Scott S. Alex, who claimed to be Arianna's father when she was detained, also admitted to a long history of drug abuse and had tens of criminal convictions.

When interviewed by the Agency's social worker shortly after Arianna's birth, Breanna stated she was not sure whether Alex or Scott was Arianna's biological father. However, Breanna and Alex considered Alex to be Arianna's father. Breanna told the social worker that Scott knew she was pregnant but he wanted nothing to do with the child. Alex knew he might not be Arianna's biological father, but considered himself her

father and wanted to support Breanna and Arianna. Alex completed a voluntary declaration of paternity at the hospital. In the initial interview, the Agency's social worker observed that Breanna seemed to rely on Alex to make decisions for her and that she called Alex "daddy." As a result, the social worker was concerned about possible domestic violence in their relationship.

Breanna, Alex and Scott all appeared at the detention hearing and the court appointed counsel for each. The court found detention of Arianna was necessary because of the substantial danger and risk of harm presented by custody with her parents. The court removed Arianna from her parents' custody and ordered reunification services for Breanna, Scott and Alex. At the hearing, Scott requested paternity testing and Alex requested presumed father status. Since the state Department of Child Support Services (DCSS) had not yet acknowledged Alex's paternity declaration, the court deferred the issue of paternity to the jurisdictional hearing.

By the time of the initial jurisdictional hearing, Breanna and Alex had obtained housing and were visiting Arianna two or three times each week. At the hearing Scott denied paternity and indicated he did not want to participate in the dependency proceeding. At the conclusion of the hearing, the court granted Scott's request, relieved his counsel and provisionally found Alex to be Arianna's presumed father. Thereafter, the court struck Scott from the Agency's petition. At Breanna and Alex's request, the juvenile court set a further contested hearing on the jurisdictional and dispositional issues.

Prior to the contested jurisdiction and disposition hearing, Alex was arrested for several drug related offenses. At the hearing, the court received the DCSS's acknowledgement of Alex's voluntary declaration of paternity and found Alex to be Arianna's presumed father. The court also determined jurisdiction was warranted, removed Arianna from her parents' care, placed Arianna in a licensed foster home and ordered continued reunification services as well as increased visitation for Breanna and Alex.[1] The juvenile court also set a six month review hearing.

Before the review hearing, Breanna and Alex ended their relationship and stopped living together. Both parents, however, actively participated in reunification services and visited regularly with Arianna. At the review hearing, Breanna and Alex contested the matter and the juvenile court set a later hearing. Before that hearing, Breanna filed a motion to set aside the court's prior judgment of paternity for Alex and requested paternity testing. In a letter accompanying her motion, Breanna stated she feared Alex was toxic to Arianna's well-being and at the time she allowed Alex to be listed as Arianna's father on her birth certificate she was suffering from battered women's syndrome.

At the six-month review hearing, the court denied Breanna's motion without prejudice, finding it was filed under the wrong statutory provision. The court also ordered continued reunification services and visitation for both parents, and set the 12-month review hearing. The Agency's report in advance of the 12-month hearing noted

---

[1] Breanna unsuccessfully appealed the jurisdictional and dispositional order.

both parents were holding jobs, progressing in their recovery and had regular, appropriate and loving visits with Arianna. Because Breanna and Alex had not found adequate housing, however, the Agency recommended that the family continue to receive reunification services for an additional six months.

The same day as the 12-month review hearing Breanna filed a second motion to set aside Alex's presumed father status and again requested genetic testing. Breanna's supporting declaration stated that Alex was not Arianna's biological father and that she signed Alex's voluntary declaration of paternity because she was under his control and "was dependent on [Alex] for support and felt [she] had no option but to place him on the birth certificate." Breanna also stated her concern that Alex would engage in controlling behavior with Arianna and that he viewed Arianna as "his last bit of control over [Breanna] and that his reason to continue his involvement with Arianna is control and not her best interests." At the review hearing the court ordered genetic testing for Alex and also set a contested hearing on the Agency's recommendation to continue services.

At the contested 12-month review hearing, the Agency recommended that Arianna, now 14-months old, be placed with Breanna. The Agency also submitted the results of the genetic testing, which confirmed Alex was not Arianna's biological father. The court followed the Agency's recommendation and placed Arianna with Breanna. The court continued Breanna's motion to set aside the prior paternity finding to give Alex's counsel time to address the results of the genetic test with him. At the continued hearing, Alex joined in Breanna's request to set aside the juvenile court's prior paternity finding. Arianna's counsel objected to setting aside the prior paternity finding on the grounds it

5

would leave Arianna without a father and requested that Scott be notified of the paternity developments. The juvenile court set an evidentiary hearing for the following month on the issue of paternity.

At the evidentiary hearing the court heard the testimony of the Agency's social worker and received into evidence Breanna's declaration, the Agency's reports and visitation logs, Breanna's paternity inquiry forms for Alex and Scott and the results of Alex's genetic testing. The Agency's social worker, Todd Clark, testified Alex was engaged in reunification services and had positive interactions with Arianna throughout the dependency. Clark testified that when he gave Alex the results of the genetic test, Alex needed time to process the information. Clark then waited for Alex to contact him to arrange further visitation with Arianna but Alex did not contact him again. Clark also testified that Alex's relationship with Breanna was strained and he believed Breanna had a restraining order in place against Alex.

Following closing arguments by counsel, the juvenile court issued its ruling. The court recognized the difficulty of the decision before it and noted the decision was complicated by the fact that there had been no objection to the earlier judgment of non-paternity with respect to Scott. The court found that although it was not generally in the interest of a child to leave her fatherless, in this case it was in Arianna's best interest not to force a co-parenting relationship between Breanna and Alex and granted Breanna's motion to set aside Alex's voluntary declaration of paternity.

DISCUSSION

Arianna argues the juvenile court's order setting aside Alex's voluntary declaration of paternity should be reversed because it was not in her best interests. The Agency, Alex and Breanna each filed a brief asking this court to affirm the order.

I

The execution of a voluntary declaration of paternity is one way an alleged father can assert his status as a presumed father entitled to custody and reunification services in a dependency proceeding. (Fam. Code § 7571.[2]) After the declaration is signed and filed with the DCSS it has the effect of a judgment and is a conclusive presumption of paternity until it is set aside. (§§ 7573, 7611, 7612, subd. (a).) A voluntary declaration of paternity filed with the DCSS is generally sufficient to entitle the male declarant to presumed father status in dependency proceedings. (*In re Liam L.* (2000) 84 Cal.App.4th 739, 747.)

When a man who has signed a voluntary declaration of paternity is determined by genetic testing not to be the biological father of the child, section 7575, subdivision (b)(1) authorizes a court to "set aside a voluntary declaration of paternity unless the court determines that denial of the action to set aside the voluntary declaration of paternity is in the best interest of the child, after consideration of" a set of factors, including "[t]he age of the child," "[t]he length of time since the execution of the voluntary declaration of paternity," "[t]he nature, duration, and quality of any relationship between the man who

---

[2]    All statutory references are to the Family Code.

signed the voluntary declaration and the child, including the duration and frequency of any time periods during which the child and the man . . . resided in the same household or enjoyed a parent-child relationship," "[t]he request of the man who signed the voluntary declaration that the parent-child relationship continue," "[n]otice by the biological father of the child that he does not oppose preservation of the relationship between the man who signed the voluntary declaration and the child," "[t]he benefit or detriment to the child in establishing the biological parentage of the child," and "[a]dditional factors deemed by the court to be relevant to its determination of the best interest of the child." (§7575, subd. (b)(1).)[3]

An order setting aside a voluntary declaration of paternity is reviewed by this court for abuse of discretion. (*Gabriel P. v. Suedi D.* (2006) 141 Cal.App.4th 850, 862-63; *In re William K.* (2008) 161 Cal.App.4th 1, 10.) The order will not be disturbed on appeal unless the court has exceeded the limits of legal discretion by making an arbitrary, capricious or patently absurd determination. When two or more inferences reasonably can be deduced from the facts, we have no authority to reweigh the evidence or substitute our decision for that of the juvenile court. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318-319.)

---

[3] Section 7646, subdivision (a)(2) also authorizes a judgment establishing paternity based on the execution of a voluntary declaration of paternity to be set aside if genetic testing indicates the man is not the biological father of the child. (§ 7646, subd. (a)(2).) Breanna's motion was brought under both sections 7646 and 7575.

We agree with Alex, Breanna and the Agency that the juvenile court did not abuse its discretion by setting aside Alex's voluntary declaration of paternity. The juvenile court conducted an evidentiary hearing and considered the applicable law and relevant factors before finding that setting aside the declaration was in Arianna's best interests. The court acknowledged its order would leave Arianna without a legal father and did not take this fact lightly in concluding that the practical realities in this unusual situation favored setting aside Alex's paternity judgment.

The court found there was no point in denying Breanna and Alex's request if, as the present circumstances indicated, Alex would be a "parent in name only" and would not contribute to Arianna's life or well-being. The court noted that Alex's reunification efforts were to be commended and that it was possible he would take an interest in Arianna's life down the road if the paternity judgment were upheld. However, the court found this uncertain possibility did not outweigh the benefits to Arianna of severing the legal tie to Alex, allowing Breanna to strengthen and develop her relationship with Arianna unimpeded by a relationship with Alex that Breanna viewed as unhealthy. This finding was supported by the facts before the juvenile court and did not constitute an abuse of discretion.

## DISPOSITION

The order is affirmed.

McCONNELL, P. J.

WE CONCUR:

O'ROURKE, J.

AARON, J.