Filed 9/29/15

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re EMMA B., a Person Coming Under the Juvenile Court Law. | |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | D067634 |
| Plaintiff and Respondent, | (Super. Ct. No. NJ14996) |
| v. | |
| MICHAEL B., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Michael J. Imhoff, Commissioner.  Affirmed.

Michele Anne Cella, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas E. Montgomery, County Counsel, John E. Phillips, Chief Deputy County Counsel, and Paula J. Roach, Deputy County Counsel for Plaintiff and Respondent.

Terence M. Chucas, upon appointment by the Court of Appeal, for Minor.

In this dependency proceeding concerning the infant Emma B. (Emma),

Michael B. (Michael), a presumed father, appeals a juvenile court order denying his

motion for paternity testing. He contends the court had an obligation to order such a test because biological paternity is a relevant fact and in denying his motion, the court prevented him from rebutting his presumed father status under Family Code[1] section 7611, subdivision (a). We disagree that a biological paternity determination is an essential or relevant issue in the current proceeding and affirm the order.

FACTUAL AND PROCEDURAL BACKGROUND

Michael and J.B. (Mother) married in 2011 and continuously lived together until Michael's military deployment to the Persian Gulf in August 2013. Michael returned home in April 2014 and found Mother was seven months pregnant, as she "had relations" with another man while Michael was gone. Michael lived with Mother throughout the remainder of her pregnancy. He was at the hospital when Emma was born in July 2014 and signed the birth certificate as Emma's "father." For a few months, he financially supported Emma and listed her as a military dependent for insurance purposes. Michael knew that he was not Emma's biological father and it is not disputed that Michael is not Emma's biological father. Nevertheless, until November 2014, Michael continued to live with Emma and Mother because he "wanted to give her (Mother) one more chance."

The San Diego County Health and Human Services Agency (Agency) first became involved in this case after receiving a report that Mother tested positive for opiates upon Emma's birth. In the next three months, the Agency received reports of two incidents, in August and October 2014, when Mother was found under the influence of drugs and unconscious while Emma was in her care. In November 2014, the Agency filed a

---

1       All further statutory references are to the Family Code unless otherwise indicated.

dependency petition on three-month-old Emma's behalf and the court issued a protective custody warrant placing Emma in foster care. (Welf. & Inst. Code, § 300, subd. (b)(1) [child at risk of harm due to parental drug use].)

On the Agency's parentage questionnaire, Mother indicated that a man named Steven was Emma's biological father. The Agency contacted the alleged biological father, Steven, and he denied paternity and said he wanted to be "left alone."

Michael also responded to the parentage questionnaire and told the Agency he had plans to divorce Mother and did not want to be involved in Emma's life because she is not his biological child. Michael indicated that he was unwilling to care for Emma and that he would be moving out of the state in December 2014 due to a military transfer.

At the November detention hearing, Michael requested paternity testing in order to rebut the marital presumptions of sections 7611 and 7540. The court deferred Michael's request. Michael then filed a formal motion requesting the court order a blood test to rebut his presumed father status pursuant to sections 7611, subdivision (a), 7540, and 7551. The motion also requested the court to set aside the presumed paternity finding and strike Michael's name from the dependency petition.

Following Michael's motion, the court held a hearing on paternity issues together with the contested adjudication and disposition hearing. The court received Michael's motion for a genetic test into evidence but ultimately denied both his requests for paternity testing and to rebut his presumed father status. The court found that Michael was Emma's presumed father by the fact of marriage, and his behavior in receiving her into his home upon birth. (§ 7611, subd. (a).)

3

The court then sustained the dependency petition, determined Emma to be a dependent of the court, placed her in the Agency's custody, and ordered reunification services for Mother and Michael. Michael appeals the denial of his motion for paternity testing.

## DISCUSSION

### I

### *INTRODUCTION*

This case arises in the context of dependency proceedings in which paternity issues are relevant in a specific statutory context. Michael contends the court erred by denying his motion for genetic testing, because he became unable to rebut the presumed father status otherwise established under section 7611, subdivision (a). He does not challenge the trial court's factual finding that he is Emma's presumed father. His contentions mainly present questions of law on the applicability of paternity statutes in a given factual context. We resolve such legal issues on a de novo basis. (*Gabriel P. v. Suedi D.* (2006) 141 Cal.App.4th 850, 856.)

### II

### *UNIFORM PARENTAGE ACT*

The Uniform Parentage Act, codified in section 7600 et. seq. (the Act), provides the framework by which California courts make paternity determinations. (§ 7610.) Under section 7611, subdivision (a), of the Act, a man is presumed the natural father of a child born during marriage, or within 300 days after the termination of his marriage to the

child's mother.  He also attains the status of presumed father if he receives the child into his home and openly holds out the child as his natural child.  (§ 7611, subd. (d).)

The presumptions arising under section 7611 are rebuttable presumptions affecting the burden of proof and may be rebutted in an appropriate action by clear and convincing evidence.  (§ 7612, subd. (a).)  However, a presumption arising under section 7611 is not, under section 7612, subdivision (a), necessarily rebutted by clear and convincing evidence that the presumed father is not the biological father of the child.  " 'Rather, the statute seeks to protect presumptions of paternity, once they have arisen, from being set aside except upon clear and convincing evidence and only in an appropriate case.' "  (*In re Jesusa V.* (2004) 32 Cal.4th 588, 605 (*Jesusa V.*), quoting *In re Kiana A.* (2001) 93 Cal.App.4th 1109, 1118-1119; see *Steven W. v. Matthew S.* (1995) 33 Cal.App.4th 1108, 1116-1117.)

III

*DEPENDENCY CONTEXT*

" 'An "alleged father" is "[a] man who may be the father of a child, but whose biological paternity has not been established, or, in the alternative, has not achieved presumed father status . . . ." ' "  (*In Re Nicholas H.* (2002) 28 Cal.4th 56, 69 (*Nicholas H.*), citing *In re Zacharia D.* (1993) 6 Cal.4th 435, 449, fn. 15; see *In re Shereece B.* (1991) 231 Cal.App.3d 613, 622.)  Statutory presumed fatherhood is based not on a biological connection but rather on a man's relationship with the child or the child's mother, and therefore, genetic testing has limited applicability in determining presumed father status.  (§ 7611, subd. (a); *Nicholas H., supra*, at p. 69 [disallowing genetic testing

5

to rebut presumed father status]; *In re Joshua R.* (2002) 104 Cal.App.4th 1020, 1026-1027.)

Because a presumed father status may, in many cases, be unrelated to natural father status (*In re Jerry P.* (2002) 95 Cal.App.4th 793, 804-805), a "man does not lose his status as a presumed father" by an admission or proof that he is "not the biological father." (*Nicholas H., supra,* 28 Cal.4th at p. 63.) Further, courts are not required to examine biological evidence in determining such presumed paternity status. (*In re Raphael P.* (2002) 97 Cal.App.4th 716, 733.)

Accordingly, a man may be a child's *presumed* father even if he is not the child's *biological* father. (*In re Jovanni B.* (2013) 221 Cal.App.4th 1482, 1490.) Presumed father status, for purposes of dependency proceedings, is not necessarily negated by evidence that the presumed father is not the biological father. (*Nicholas H.*, *supra*, 28 Cal.4th at p. 67.)

IV

*ANALYSIS*

Section 7551 of the Family Code governs genetic testing and provides in pertinent part: "In a civil action or proceeding in which paternity is a relevant fact, the court may upon its own initiative . . . and shall upon motion of any party to the action or proceeding . . . order the mother, child, and alleged father to submit to genetic tests." In this instance, Michael claims that he is entitled to a genetic test to rebut his status as Emma's presumed father. However, genetic testing is authorized for alleged fathers, not presumed fathers,

6

and only in civil actions or proceedings "in which paternity is a relevant fact." (§ 7551; *Nicholas H., supra,* 28 Cal.4th at p. 69.)

Contrary to Michael's claims, the court did not err by denying his motion for a genetic test because he is not an alleged father and biological paternity is not a relevant fact at this stage of this particular dependency proceeding.[2] Here, Michael requested genetic testing under section 7551, but he could not show entitlement to it due to his status as presumed father, and biological paternity was, as yet, irrelevant. Michael's nonbiological connection to Emma had already been established. Michael argues that a genetic test showing he is not Emma's biological father would rebut his presumed father status, however, lack of a biological connection does not necessarily negate a presumed father status in a dependency action. (*Nicholas H., supra,* 28 Cal.4th at p. 63.)

A court confronted with the contention that biological paternity "necessarily rebuts another man's presumption of paternity under section 7612, subdivision (a) . . . must instead consider whether rebuttal of the presumption would be appropriate in the circumstances of the case." (*Jesusa V., supra,* 32 Cal.4th at p. 606.) In making this determination, the court is obligated to weigh all pertinent factors, including biological paternity. (*Gabriel P., supra,* 141 Cal.App.4th at p. 864; *Nicholas H., supra,* 28 Cal.4th at p. 64.)

In determining Michael's status, the court acknowledged the nonexistence of biological paternity but found Michael to be a presumed father based on his marital status

---

[2] All parties agree that section 7540 et. seq., the conclusive presumption of paternity based on cohabitation with the child's mother during conception, is inapplicable here. (*Jesusa V., supra,* 32 Cal.4th at p. 606.) The court did not rely on section 7540 in reaching its determination that Michael is Emma's presumed father.

and conduct, in spite of his lack of biological connection to Emma. Michael was married to Mother at the time of Emma's birth, signed Emma's birth certificate, financially supported her, put her on his military insurance, and for a limited period, accepted her into his home.

On appeal, Michael does not argue that his conduct did not support a finding of presumed father status. He only challenges the trial court's denial of his motion for genetic testing. In the context of a dependency hearing to determine presumed parentage of a child, where the court has identified a presumed father based on marital status and conduct, the issue of biology is not a relevant fact and the presumed father is not entitled to a genetic test. We emphasize that this opinion is limited to the factual situation presented and we do not comment on Michael's future status in other proceedings (e.g. support).

## DISPOSITION

The order is affirmed.

HUFFMAN, Acting P. J.

WE CONCUR:

NARES, J.

McDONALD, J.

8