[No. B152685. Second Dist., Div. Five. Oct. 21, 2002.]

COUNTY OF LOS ANGELES, Plaintiff and Respondent, v.
SHELDON P., Defendant and Appellant.

**COUNSEL**

Law Offices of Gary W. Kearney and Gary W. Kearney for Defendant and Appellant.

L. Stewart, Nancy Ruffolo and Tammy Nakada for Plaintiff and Respondent.

**OPINION**

**ARMSTRONG, J.**—The County of Los Angeles (through the Child Support Division of the Los Angeles County District Attorney's Office) (County) filed a complaint regarding parental obligations, contending that appellant Sheldon P. was the father of a three-year-old girl, J., and asking that he be ordered to pay support in the amount of $390 each month. Sheldon P. defended on the ground that another man, Leon M., had signed a voluntary declaration of paternity regarding J. The County moved to set the declaration aside under Code of Civil Procedure section 473. The trial court granted the motion. Sheldon P. filed this appeal.[1] We find that the trial court order cannot stand because Leon M. was not given notice of the proceeding.

### Voluntary Declarations of Paternity

With the adoption of the statutory scheme on voluntary declarations of paternity, Family Code[2] section 7570 et seq., the Legislature declared that there was a compelling state interest in establishing paternity for all children, with the goal of providing children with support awards and with equal access to benefits such as Social Security, health insurance, and inheritance rights, and found that "Knowledge of family medical history is often necessary for correct medical diagnosis and treatment. Additionally, knowing one's father is important to a child's development." (§ 7570, subd. (a).)

The Legislature further found that a simple system for voluntary paternity declarations would result in a significant increase in the ease of establishing

---

[1] We asked the parties to brief the issue of appealability of the order. Sheldon P. contended that the order is appealable as an order on motion to set aside a judgment, and the County argued that the order is not appealable, since there is no judgment in *this* case. We tend to agree with the County, but find that under the unusual circumstanced presented in this case, the notice of appeal should be deemed a petition for writ of mandate. (*Olson v. Cory* (1983) 35 Cal.3d 390, 401 [197 Cal.Rptr. 843, 673 P.2d 720]; *Morehart v. County of Santa Barbara* (1994) 7 Cal.4th 725, 745 [29 Cal.Rptr.2d 804, 872 P.2d 143].)

[2] All further statutory references are to that code unless otherwise indicated.

paternity and a significant decrease in the time and money needed to establish paternity, and was in the public interest. (§ 7570, subd. (b).) The Legislature adopted such a system. Under section 7571, "upon the event of a live birth, prior to an unmarried mother leaving any hospital, the person responsible for registering live births . . . shall provide to the natural mother and shall attempt to provide, at the place of birth, to the man identified by the natural·mother as the natural father, a voluntary declaration of paternity together with the written materials described in Section 7572. Staff in the hospital shall witness the signatures of parents signing a voluntary declaration of paternity and shall forward the signed declaration to the Department of Child Support Services within 20 days of the date the declaration was signed."[3] (§ 7571, subd. (a).) The written materials must inform the parents that once filed, a voluntary declaration of paternity establishes paternity, and must also inform the father that by signing the voluntary declaration he is waiving the constitutional right to have paternity established by a court. (§ 7572, subd. (b).)

Once a voluntary declaration has been filed with the Department of Child Support Services, it "shall establish the paternity of a child and shall have the same force and effect as a judgment for paternity issued by a court of competent jurisdiction. The voluntary declaration of paternity shall be recognized as a basis for the establishment of an order for child custody, visitation, or child support." (§ 7573.)

There are, however, circumstances under which a voluntary declaration may be rescinded or set aside. Under section 7575, subdivision (a), either parent may rescind the declaration within 60 days merely by filing a form. Under 7575, subdivision (b), a court may set a declaration aside when court-ordered blood tests (§ 7550 et seq.) establish that the declarant is not the child's father. (§ 7575, subd. (b)(1).) Section 7575, subdivision (c) provides that "Nothing in this chapter shall be construed to prejudice or bar the rights of either parent to file an action or motion to set aside the voluntary declaration of paternity on any of the grounds described in, and within the time limits specified in, Section 473 of the Code of Civil Procedure." (§ 7575, subd. (c)(1).) Notably, section 7575, subdivision (c) ends with the rule that "Nothing in this section is intended to restrict a court from acting as a court of equity." (§ 7575, subd. (c)(4).)

*Facts*

J. was born in July 1997. According to evidence presented by the County at the hearing on the motion to set aside the voluntary declaration, Sheldon

---

[3]A hospital which has entered into a specified agreement with the local child support agency is paid $10 for each completed declaration of paternity filed with the Department of Child Support Services.

P. supported J. from November of 1997 until September of 2000. After that time, he was no longer willing to do so. J.'s mother (Mother) sought help from the County.

The County filed its complaint on September 29, 2000, seeking support beginning October 1. Sheldon P. moved to quash the complaint based on the existence of a prior judgment, the voluntary declaration. He asked the court to take judicial notice of that document and attached a copy to the motion. ██ █ █ Nothing indicates that the declaration was filed with the Department of Child Support Services.[4]

The declaration lists Mother as J.'s mother and Leon M. as her father, and gives an address, Social Security number, and date and place of birth for each. It bears Mother's signature, attesting that she is the mother and that the man named as the father is the father. It bears another signature, as the father, which reads "Leon [M.]" It is witnessed by a Georgina Lopez of Monterey Park Hospital.

With its reply to Sheldon P.'s motion to quash the complaint, the County attached a DNA report dated September 19, 1997, indicating that the testing took place on September 10, and showed a 99.85 percent probability that Sheldon P. is J.'s father. Sheldon P. has never questioned the reliability of the report. To the contrary, in the trial court he asserted that it was *undisputed* that he, Mother, and J. participated in genetic testing on September 10, 1997, and that the testing determined that there was a 99.85 percent probability that he was J.'s father.

Sheldon P.'s motion to quash the complaint was denied by a commissioner. He sought a hearing de novo. While the de novo hearing was pending, the County filed an application to set aside the declaration. The pleading is signed by a deputy district attorney, but includes the statement that "I signed a voluntary declaration of paternity stating that I am the mother . . . ." In the accompanying points and authorities, the County requested that J. and Mother be joined in the action and asserted that it brought the motion on behalf of both mother and child.

The motion was denied by a commissioner and the County requested de novo review. The trial court set a hearing to determine whether the case fell under Code of Civil Procedure section 473.

At the hearing, Mother testified that she had had sex with Sheldon P. nine months before J.'s birth. When she told Sheldon P. that she was pregnant, he

---

[4] *In re Raphael P.* (2002) 97 Cal.App.4th 716 [118 Cal.Rptr.2d 610], recently held that under Evidence Code section 664, it is presumed that a voluntary declaration, once signed, has been filed. (*Raphael P.*, at p. 738.)

asked her to take a blood test. She refused, fearing that the test would endanger her pregnancy.

Mother had not had sex with Leon M. She testified that she did not speak to Leon M. about the declaration until J. was born but also testified that during her pregnancy, she spoke to Leon M. about giving her child his name. She did so because she was unemployed and because Sheldon P. had refused to give her financial help. In contrast, Leon M. had offered to help her until her baby was born. Mother testified that she and Leon M. signed the declaration, thinking that if something happened to Mother, there would be someone to take care of her baby. Mother did not believe that Sheldon P. would take care of the child.

Leon M. was not present for J.'s birth. Sheldon P. was. During the next week, Sheldon P. and his son visited J., and he took J. to his mother's house so that his mother could see the baby. In September 1997, Mother, Sheldon P., and J. had the blood test Sheldon P. had requested. Sheldon P. was happy when he heard the results, and in November, he asked Mother and J. to move in with him. They all lived together until September of 2000. Due to the voluntary declaration, J. was "[J.M.]" on her birth certificate. At her baptism, the church insisted that J. use her birth certificate name. However, she was J. P. when she enrolled in school, and she was carried on Sheldon P.'s health insurance under that name.

The County introduced pictures taken during the period when J., Sheldon P., and Mother lived together. They are best characterized as typical family pictures: J., Mother, Sheldon P., and Sheldon P.'s son on Christmas morning; J. with Sheldon P.'s sister; J.'s first birthday party.

Regarding the declaration, Mother testified that within hours of J.'s birth, someone from the hospital approached her with the declaration and told her that she could not leave without giving all the information requested about the father. Mother was not given any written materials and the document was not explained to her. She did not read it before she signed it, because she believed that it was "just a regular document that asked for personal data . . . because you're there at the hospital. . . ." Mother, who had taken pain medication, did not know that the document had legal significance.

Nothing in the record informs us of the circumstances under which the second signature on the voluntary declaration was obtained.

Mother testified that Leon M. saw J. only once, in an accidental encounter in a park.

*Discussion*

We discuss Sheldon P.'s contentions, bearing in mind that the purpose of the statutory scheme on voluntary declarations is to speedily identify the father of each child born in California, so that children may know their medical histories, know their fathers, and receive the financial support and monetary benefits due to them. (§ 7570, subd. (a); see § 3900 [parents' obligation to support their children].) The law was not enacted as a means for fathers to avoid their obligations or to play "gotcha" with the duties and obligations of parenthood.

Further, though a voluntary declaration may be a basis for a custody or visitation order (§ 7572, subd. (b)), the statutory scheme on voluntary declarations does not in and of itself determine child custody. A larger body of law, including the dependency law and other parts of the family law, may come into play when those decisions are made. Notably, the issues to be litigated on the County's complaint here are "limited strictly to the question of parentage . . . and child support . . . ." (§ 17404, subd. (a).)

Sheldon P. has raised several grounds on appeal: that the order setting aside the voluntary declaration cannot stand because Leon M. was not joined in the proceedings (Code Civ. Proc., § 389), that the County did not have standing to bring the motion to set aside the voluntary declaration, that Mother was not sufficiently diligent to qualify for relief under Code of Civil Procedure section 473, that state law allowing a voluntary declaration to be set aside for mistake, inadvertence, surprise, or excusable neglect is preempted by federal law, and that the County did not meet its burden of proof under either the state or federal standard.

We agree with the first contention, but not with the others. Our remand is thus limited: Leon M. must be joined as a party and given notice and an opportunity to be heard, but unless he chooses to appear, and presents evidence or asserts a position which causes the trial court to change its ruling, the trial court can and should enter a new order setting aside the voluntary declaration. Sheldon P. may fully participate in any new hearing, but he may not relitigate matters already litigated. Mother and the County demonstrated to the satisfaction of the trial court (and to our satisfaction) that they were entitled to relief under Code of Civil Procedure section 473. As to Sheldon P., that ship has sailed.

*Code of Civil Procedure section 389*

"A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be

joined as a party in the action if . . . he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest . . . ." (Code Civ. Proc., § 389, subd. (a).)

Leon M. is, as far as we know, subject to service of process.[5] On this record, there is no reason why his joinder would deprive the court of jurisdiction. Further, with Leon M.'s signature on the voluntary declaration, he became a presumed father, entitled to certain rights (§ 7611; *In re Liam L.* (2000) 84 Cal.App.4th 739, 746 [101 Cal.Rptr.2d 13] [voluntary father is presumed father entitled to reunification services in dependency]) and subject, or potentially subject, to certain obligations. (§ 17410 [County may file action for child support based on a voluntary declaration].) Leon M. is thus a person having an interest in the subject of the motion. Disposition of the action in his absence might well impair his ability to protect his interest.

We also find that basic principles of due process mandate that Leon M. be given notice and an opportunity to be heard. Notably, those principles are acknowledged elsewhere in the statutory scheme on voluntary declarations. For instance, where section 7575 provides that a parent may rescind the voluntary declaration within 60 days, it also provides that the rescission form must include a declaration under penalty of perjury that a copy was sent to the other person who signed the voluntary declaration. (§ 7575, subd. (a).) The Rule of Court relevant to section 7575, subd. (c), on Code of Civil Procedure section 473 motions to set aside voluntary declarations, provides that a person who signed a such a declaration may move to set it aside, but also requires service of the motion (and a blank response form) on the other person who signed the declaration. (Cal. Rules of Court, rule 1280.10(d).)

Given the circumstances before us here, the remand may seem drastic. With the exception of a single act of generosity, Leon M. has no connection to J. His voluntary declaration has not advanced her interest in knowing her medical history, knowing her father, or in receiving support. In contrast, Sheldon P. is J.'s biological father. He is also a presumed father, because he lived with her, supported her, and held her out as his own for the first three

---

[5] As the County reads Sheldon P.'s argument, it is that Leon M. is subject to service under California Rules of Court, rule 1280.10, which requires a voluntary declarant moving to set aside the declaration (§ 7575, subd. (c)) to serve the other signatory. Based on the title of the rule, the County argues that the rule does not apply, and thus that Leon M. is not subject to service of process, and Code of Civil Procedure section 389 does not apply. We do not see that reference to the rule is either necessary or determinative. Leon M. is subject to service of process if he can be served pursuant to the Code of Civil Procedure.

years of her life.[6] (§ 7611, subd (d).) However, it is easy to imagine cases in which a motion to set aside a voluntary declaration of paternity has the potential to deprive the voluntary father, who may also be the biological father, or the presumed father for additional reasons, of rights he wishes to assert. Thus, the voluntary declarant must be made a party to any proceeding to set a voluntary declaration aside.

We note, too, that the child's interest and rights may be at stake on such a motion. For that reason, trial courts would be wise to appoint a guardian ad litem for the child, in appropriate cases.

*Standing*

We find that the County had standing to bring the motion to set aside the voluntary declaration.[7] Under section 17400, subd. (a), the County is required to maintain a local child support agency responsible for "promptly and effectively establishing . . . child support obligations . . . and determining paternity in the case of a child born out of wedlock." Given that responsibility, there can be no question that the County was entitled to defend against Sheldon P.'s motion to quash the complaint. The County's motion to set the declaration aside resulted in identical issues being litigated in a slightly different form, and rendered the motion to quash moot. It would be nonsense to hold that the County could defend against Sheldon P.'s motion, but not file its own, when the same issues were at stake in each. Further, the County acted on Mother's behalf, and for her benefit, and thus had standing.

Sheldon P.'s standing arguments are based on section 7575. He first cites section 7575, subdivision (c)(1), which provides that "Nothing in this chapter shall be construed to prejudice or bar the rights of either parent to file an action or motion to set aside the voluntary declaration of paternity on any of the grounds described in, and within the time limits specified in, Section 473 of the Code of Civil Procedure." (§ 7575, subd. (c)(1).) Sheldon P. reasons that since the subdivision mentions parents, but not the County, only parents may file a motion to set aside a voluntary declaration. We cannot agree. The statute does not explicitly bar the County from filing the motion, and to find such a rule by implication would be to read too much into a subdivision

---

[6]Under section section 7612, subdivision (b) where two presumptions arise under section 7611, "the presumption which on the facts is founded on the weightier considerations of policy and logic controls."

[7]Here, Sheldon P. challenges the County's standing. Elsewhere in his brief, he challenges Mother's diligence in bringing the motion, impliedly acknowledging that despite the fact that the County did not secure a ruling on its request to join her in the motion, she was in all practical senses a party to the proceedings.

which by its own terms merely seeks to establish that the chapter does not limit other rights.

Sheldon P. also relies on subdivision (b) of section 7575. Subdivision (b)(1) allows a court to set aside a voluntary declaration if, based on court-ordered genetic tests, it finds that the voluntary father is not the father of the child. Subdivision (b)(2)(A) concerns motions for court-ordered genetic tests, and provides that such motions may be filed by, inter alia, the local child support agency. Sheldon P. cites subdivision (b)(2)(B), which provides that "The local child support agency's authority under this subdivision is limited to those circumstances where there is a conflict between a voluntary acknowledgement of paternity and a judgment of paternity or a conflict between two or more voluntary acknowledgments of paternity." (§ 7575, subd. (b)(2)(B).) He argues that there is no such conflict and that the County thus had no standing. We see no ground for reversal. Sheldon P. asked for and participated in a genetic test, without court order. Section 7575, subdivision (b) is simply irrelevant to this case.

Under the general heading of standing, Sheldon P. also argues that this case falls under the doctrine that "an action not founded upon an actual controversy between the parties to it, and brought for the purpose of securing a determination of a point of law, is collusive and will not be entertained; and the same is true of a suit the sole object of which is to settle rights of third persons who are not parties." (*Golden Gate Bridge etc. Dist. v. Felt* (1931) 214 Cal. 308, 316 [5 P.2d 585].) There clearly is an actual controversy here, between the County, which is charged with obtaining support from fathers, and Sheldon P., who does not wish to support his child.

### Mother's diligence

Code of Civil Procedure section 473, subdivision (b), requires that a motion under that statute be filed "within a reasonable time, in no case exceeding six months, after the judgment, dismissal, order or proceeding was taken." Section 7575 provides that on motions to set aside a voluntary declaration, the Code of Civil Procedure section 473 timetable begins to run "on the date that the court makes a finding of paternity based upon the voluntary declaration of paternity in an action for custody, visitation, or child support." (§ 7575, subd. (c)(1).) It is apparent that, since no court ever made a finding of paternity based on the voluntary declaration at issue here, no time period has even begun to run.

Sheldon P. argues, correctly, that a motion under Code of Civil Procedure section 473 nevertheless requires a showing of diligence. (*Zamora v. Clayborn Contracting Group, Inc.* (2002) 28 Cal.4th 249, 258 [121 Cal.Rptr.2d

187, 47 P.3d 1056].) He also argues that Mother was not diligent, so that the motion should have been denied. A motion under Code of Civil Procedure section 473 is addressed to the sound discretion of the trial court (*Carroll v. Abbott Laboratories, Inc.* (1982) 32 Cal.3d 892, 897-898 [187 Cal.Rptr. 592, 654 P.2d 775]), and we see no abuse of discretion in the trial court's implied finding that Mother was sufficiently diligent.

Sheldon P. took J. into his house, held her out as his own, and supported her for three years. Under those circumstances, it is perfectly reasonable that Mother, who did not understand the legal effect of the voluntary declaration, did not attempt to rescind the declaration. She acted promptly once Sheldon P. refused to continue to support his daughter.

*Federal preemption*

Here, Sheldon P. argues federal law has preempted "the area of procedures for determining paternity through a voluntary declaration." In support, he cites 42 United States Code section 666, and argues that under that statute, states may allow voluntary declarations to be challenged only on the ground of fraud, duress, or material mistake of fact. (42 U.S.C. § 666 (a)(5)(D)(iii).)

The cited statute is part of the statutory scheme on Aid to Families with Dependent Children (AFDC). It sets forth the laws which states must enact to satisfy Federal requirements and to increase the effectiveness of the AFDC program. (42 U.S.C. § 666(a)(1); 42 U.S.C § 654.) It was undisputed here that J. and Mother had not accepted AFDC benefits. Nothing in Sheldon P.'s argument establishes a "clear and manifest purpose of Congress" to foreclose state legislation which allows voluntary declarations to be set aside on grounds other than fraud, duress, or material mistake of fact, where AFDC is not involved. (*Fenning v. Glenfed, Inc.* (1995) 40 Cal.App.4th 1285, 1290-1291 [47 Cal.Rptr.2d 715]; *Elsworth v. Beech Aircraft Corp.* (1984) 37 Cal.3d 540, 548 [208 Cal.Rptr. 874, 691 P.2d 630].)

*Abuse of discretion*

Here, Sheldon P. argues that Mother did not show mistake, surprise, or excusable neglect, in that she signed the voluntary declaration knowing that Leon M. was not the father. We see no abuse of discretion. Mother was asked to sign the declaration very shortly after giving birth, while she was taking pain medication, at a time when Sheldon P. had refused to assist her. She was not given the explanatory materials required by statute, and no one explained the document. To the contrary, she was told that she could not

leave the hospital without providing information about her baby's father. That is an ample factual record to support the trial court's finding.

*Sheldon P.'s request for attorney's fees*

■ Sheldon P. ends his brief with a request that we award him attorney's fees under Code of Civil Procedure section 1021.5. He bases his argument on his efforts to persuade us to find federal preemption of portions of section 7575. His efforts were unsuccessful, and his motion is denied.

### Disposition

Let a peremptory writ of mandate issue, directing the trial court to vacate its order granting the County's motion to set aside the voluntary declaration of paternity which lists Leon M. as J.'s father, and to conduct further proceedings consistent with this opinion. The County to recover costs on appeal.

Turner, P. J., and Mosk, J., concurred.

Appellant's petition for review by the Supreme Court was denied January 15, 2003.