Filed 10/23/14  R.M. v. A.C. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| R.M., | D064834 |
| Respondent, | |
| v. | (Super. Ct. No. ED86667) |
| A.C., | |
| Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Darlene A. White, Commissioner.  Affirmed.

Dunne & Dunne and Anthony J. Dunne for Appellant.

Victor Mordey for Respondent.

In 2009, A.C. gave birth to S.  R.M. is S.'s biological father.  A.C. allowed R.M. to regularly see S. for several years, but when A.C. stopped allowing him to visit, R.M. filed this action seeking to establish paternity and for orders granting him joint custody and reasonable visitation.  In conjunction with his action, R.M. requested and obtained an order for DNA testing that revealed he was S.'s biological father.  However, shortly after R.M. filed this action, A.C. married Javier C., and she opposed R.M.'s application on the

grounds that Javier should be declared the presumed father of S. The court's judgment found R.M. was S.'s legal father, entered a judgment declaring A.C. and R.M. are S.'s parents, and set the matter for further consideration of the custody and visitation issues.

A.C. appeals the judgment. She contends that, under *Gabriel P. v. Suedi D.* (2006) 141 Cal.App.4th 850 (*Gabriel P.*), the court was sua sponte required to join Javier as an indispensable party and it was reversible error to enter the judgment in Javier's absence. A.C. also argues the court erred when it did not consider whether she and Javier were putative spouses and/or common law spouses at the time of S.'s conception and birth within the meaning of Family Code[1] section 7540.

I

FACTUAL BACKGROUND

R.M. met A.C. at a dance club in the spring of 2008 and began a romantic relationship that lasted until early 2009, during which time she became pregnant with S. During this period, A.C. never mentioned she was in a relationship with Javier, much less claimed she was married to him. However, about three months before S.'s birth, A.C. told R.M. that, while she had been seeing R.M., she had also been seeing the father of her other child, and she and this man had decided to get back together. Shortly thereafter, A.C. disappeared.

---

[1] All further statutory references are to the Family Code unless otherwise specified.

2

A few months after S.'s birth, R.M. was able to find A.C., and they resumed a friendly relationship.[2]  During 2010 and 2011 R.M. was able to regularly visit and develop a relationship with S., albeit without Javier's knowledge, although there were periods of time during which A.C. did not maintain contact with R.M.  However, after A.C. again unilaterally terminated his ability to visit S. in late 2011, R.M. filed the present action in early 2012.[3] During this time, R.M. believed Javier was A.C.'s "boyfriend."

## II

## PROCEDURAL BACKGROUND

### A. The Petition and DNA Testing Order

R.M. filed the present action in February 2012 against A.C. seeking an order establishing R.M. was S.'s parent, and for orders granting R.M. joint custody and reasonable visitation.  A.C. opposed R.M.'s petition, alleging Javier should be considered S.'s father because Javier raised S. since his birth, and this social relationship is more important than the biological relationship.

R.M. subsequently requested an order for DNA testing.  A.C. opposed the motion, asserting she and Javier were married in Mexico in 2000 and S. was born during that marriage, which raised the conclusive presumption under section 7540 that Javier was S.'s father.  A.C. also asserted Javier had raised S. from birth within the presumption

---

[2]    Around the same time, Javier learned S. was not his child.  However, he and A.C. went to counseling and he held out S. as his child.

[3]    A few months after R.M. filed this action, A.C. and Javier married in California.

3

provided by section 7611, subdivision (d). At a contested hearing, R.M. asserted the conclusive presumption under section 7540 had no application because (1) the document submitted by A.C. to prove the existence of the Mexican marriage should be excluded from evidence because of improper authentication, and (2) expert testimony would show the document submitted by A.C. to prove the existence of the Mexican marriage was a forgery. After hearing the evidence concerning the alleged Mexican marriage, the court concluded A.C. had not satisfied her burden of showing she and Javier qualified for the conclusive section 7540 presumption, and granted R.M.'s request for DNA testing. The results of those tests confirmed R.M. was S.'s biological father.

B. The Paternity Hearing

The court subsequently held a contested trial on whether to grant R.M.'s request for a declaration that he was S.'s father. A.C. opposed R.M.'s request to be declared S.'s father by resurrecting her claim that Javier was conclusively presumed to be S.'s father under section 7540, and by reasserting Javier should be deemed S.'s father under the presumption provided by section 7611, subdivision (d). After noting the absence of proof of a valid marriage precluded a paternity judgment under section 7540 declaring Javier to be S.'s father, the court observed that Javier (despite knowledge of the pending proceedings and having ample opportunity) had not elected to intervene in the action to seek a declaration of paternity, and expressed doubts it could declare Javier to be S.'s father without Javier's voluntary participation in the proceedings.

The court then heard the evidence and solicited the parties' legal arguments on R.M.'s petition. A.C. argued the court should deny R.M.'s petition and instead declare

4

Javier to be S.'s father. She also asserted, without citation to authority, the court sua sponte could order Javier joined as a party to declare him S.'s father. R.M. asserted he was entitled to a declaration that he was S.'s father and, because Javier had elected not to intervene despite R.M.'s attempts on many occasions to alert Javier that he would need to intervene if he wished to assert a competing right to be adjudged S.'s father, there was no person whose competing interest in being declared S.'s father was superior to R.M.'s interest.

The court's statement of decision found R.M. was the biological father of S., had held S. out as his own child since before birth, exercised visitation when allowed by A.C., and had continued to seek a relationship with him. Because Javier had ample notice and opportunity to assert his legal rights but did not do so, the court found there was neither a competing father nor any presumption that would prevent R.M. from being adjudicated S.'s father. The court entered a judgment of paternity declaring R.M. to be S.'s father. A.C. appeals.

III

ANALYSIS

A. The Indispensable Party Claim

A.C. argues the court did not have the authority to enter judgment declaring R.M. to be S.'s father because the court was required to, but did not, order Javier joined pursuant to Code of Civil Procedure section 389 as an indispensable party. A.C. argues Javier was an indispensable party under *Gabriel P.*, *supra*, 141 Cal.App.4th 850. She alternatively argues Javier was an indispensable party because he would have standing

5

(as a presumed parent under § 7611) to pursue a petition to establish his own parental relationship with S., thereby risking multiple inconsistent judgments.

We are not persuaded by A.C.'s arguments, for several reasons.  First, we are convinced *Gabriel P.* provides no basis for reversing the judgment in this case.  In *Gabriel P.*, the biological father filed an action against the mother seeking a declaration of paternity for Seanna, but did not join mother's boyfriend, who had previously executed a valid "voluntary declaration of paternity" as to Seanna under section 7571 et seq. (*Gabriel P., supra,* 141 Cal.App.4th at p. 855.)  A valid voluntary declaration of paternity, unless set aside, has the same force and effect as a judgment of paternity by a court (§ 7573) and may not be set aside except as provided under section 7575, which specifically requires the court to consider (among other things) "[t]he request of the man who signed the voluntary declaration that the parent-child relationship continue."  (*Id*. at subd. (b)(1)(D).)  The trial court in *Gabriel P.* set aside the voluntary declaration of paternity, based on test results indicating the boyfriend was not the biological father.  The appellate court reversed, concluding the boyfriend was a necessary party to an action seeking to set aside a document that has the same force as a judgment of paternity, because (1) *County of Los Angeles v. Sheldon P.* (2002) 102 Cal.App.4th 1337, 1345 held a voluntary declarant "must be made a party to any proceeding to set a voluntary declaration aside," and (2) the statute compels a court to consider the relationship between the voluntary declarant and the child when considering whether to set aside a voluntary declaration.  (*Gabriel P.,* at p. 865.)  Here, there is no voluntary declaration by Javier having the same effect as a competing judgment as to Javier's paternity of S., and

6

no statutory or decisional mandate that Javier be joined in an action seeking to declare R.M.'s paternity of S., which renders *Gabriel P.'s* discussion of necessary parties inapposite to the present action.

A.C. also asserts Javier was an indispensable party because he would have standing to seek a judgment establishing his own parental relationship with S., thereby risking multiple inconsistent judgments. Although Javier may have been a "proper" party, "[t]hose who may be 'proper' parties to a controversy are not always necessary or indispensable parties" (*Jones v. Feichtmeir* (1949) 95 Cal.App.2d 341, 345), and the mere fact a judgment might indirectly affect the interests of a third person does not make that third person an indispensable party. (*Las Virgenes Educators Assn. v. Las Virgenes Unified School Dist.* (2001) 86 Cal.App.4th 1, 8-9.) Although Javier may be indirectly affected by the judgment that R.M. was a parent of S., that did not make Javier an indispensable party to R.M.'s action.[4]

B. <u>The Marriage Claim</u>

A.C. argues the trial court erred when it did not consider whether the section 7540 conclusive presumption, which could have barred R.M. from his requested relief (cf. *Rodney F. v. Karen M.* (1998) 61 Cal.App.4th 233), could have been triggered by virtue of A.C. and Javier being either common law spouses under the laws of Mexico (within

---

4    Indeed, A.C.'s claim appears to be that Javier's interest as a presumed father under section 7611 was necessarily terminated by the declaration that R.M. was a parent of S. However, under section 7612, subdivision (c), "a court may find that more than two persons with a claim to parentage under this division are parents if the court finds that recognizing only two parents would be detrimental to the child." Thus, under the statutory scheme, a declaration that R.M. is a parent of S. does not preclude Javier from seeking to establish that he is *also* a parent of S.

the meaning of § 308) or putative spouses (within the meaning of § 2251).  However, it does not appear that A.C. raised either of these arguments below, and each of these newly-minted arguments appears to involve factual questions requiring resolution by the trier of fact.  (Cf. *In re Marriage of Smyklo* (1986) 180 Cal.App.3d 1095, 1097-1099 [determination of validity of a common law marriage reviewed under substantial evidence standard]; *In re Marriage of Ramirez* (2008) 165 Cal.App.4th 751, 756-757 [determination of putative spouse status reviewed under substantial evidence standard], disapproved on other grounds in *Ceja v. Rudolph & Sletten, Inc.* (2013) 56 Cal.4th 1113, 1126, 1128, fn. 12.)  Because a party may not assert for the first time on appeal theories that turn on factual questions not raised and resolved below (*Strasberg v. Odyssey Group, Inc.* (1996) 51 Cal.App.4th 906, 920; *McDonald's Corp. v. Board of Supervisors* (1998) 63 Cal.App.4th 612, 617-618), we decline to consider either of these new theories.

## DISPOSITION

The judgment is affirmed.  R.M. is entitled to costs on appeal.


McDONALD, J.

WE CONCUR:


McCONNELL, P. J.


AARON, J.

8