Filed 12/29/20  Alameda County Dept. of Child etc. v. Jacob C. CA1/3
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ALAMEDA COUNTY DEPARTMENT OF CHILD SUPPORT SERVICES,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>JACOB C.,<br><br>        Defendant and Appellant;<br><br>A.D.,<br><br>        Real Party in Interest. | A158550<br><br><br>(Alameda County<br>Super. Ct. No. HF18894934) |

This is an appeal by defendant Jacob C. (father) of a trial court order, issued August 26, 2019, denying his motion under Family Code section 7575, subdivision (c)(1) to set aside a paternity judgment and voluntary declaration of paternity (VDOP) as to minor David C.[1]  The trial court denied defendant's

---

[1] All statutory citations herein are to the Family Code unless otherwise stated.  The Family Code's statutory scheme governing the establishment of parentage, which includes section 7575, was amended effective January 1, 2020, after the trial court issued the August 26, 2019 order under challenge on appeal.  (Stats. 2018, ch. 876.)  For reasons explained *post* (pp. 9–12), and in accordance with section 4, subdivision (e), we apply the versions of these statutes in effect at the time of the court's August 26, 2019 order.  (See *In re Marriage of Heikes* (1995) 10 Cal.4th 1211, 1214, fn. 1 (*Heikes*).)  Accordingly,

1

motion after finding that it was filed more than two years after David's birth and was therefore untimely. The trial court further found that, even if timely, defendant's motion would nonetheless fail for lack of evidence that the VDOP was invalid or a product of fraud or material mistake of fact.

On appeal, defendant challenges the trial court's order on a variety of grounds, including the court's purported misapplication of the statutes governing the timeliness of his motion, improper shifting of the burden of proof to him, improper consideration of an excluded exhibit, and disregard of "uncontroverted" evidence that the VDOP was the product of fraud and mistake of fact. For reasons set forth below, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

David was born on June 10, 2012. The next day, defendant and A.D. (mother) signed a VDOP acknowledging defendant as David's biological father.

On February 28, 2018, plaintiff Alameda County Department of Child Support Services (AC-DCSS) filed a summons and complaint for a judgment against defendant for payment of child support and health insurance for David. The issue of paternity was not placed at issue in the complaint, and the proposed judgment called for a monthly support payment for David in the amount of $756.

On April 3, 2018, defendant filed an answer to the complaint in which he disagreed with the proposed judgment and asserted: "I have taken a DNA test prior to receiving this judgment. I am more than happy to take another

unless otherwise stated, all citations and references to these statutes, and in particular to sections 7571 through 7575, are to their prior versions that were in effect and before the trial court when it ruled on defendant's motion to set aside the paternity judgment and VDOP.

test for the court. The mother . . . has personally stated to me that I'm not the father, and she knows the actual father."

On June 1, 2018, after defendant appeared in propria persona at a contested hearing on the AC-DCSS's complaint, the court ordered him to pay David's health insurance and a modified amount of child support set at $600 per month, effective retroactively to April 1, 2018. Further, noting that the issue of paternity had not been raised in the complaint, the court joined mother as a party to the action and continued the hearing to allow defendant to obtain legal advice regarding his desire to challenge the validity of the VDOP.

On August 10, 2018, defendant, represented by counsel, filed a motion to set aside the June 1, 2018 judgment and the VDOP that he signed on June 11, 2012 (hereinafter, set aside motion). By this motion, defendant also sought an order requiring the parties to undergo paternity testing and an amendment to David's birth certificate deleting defendant's name.

A long cause hearing on the set aside motion was held on February 25, 2019. At this hearing, defendant testified that mother told him multiple times prior to David's birth, and even after they broke up, that he was the only possible father. Defendant also testified that mother confirmed he was the father on the day of David's birth, when defendant was with them at the hospital. Based on this information, defendant regularly visited David for the first three years of his life. However, these visits stopped in late 2015 or early 2016 when mother told him he was not David's father. Father opined that mother took these actions upon learning he had a new girlfriend.

Defendant further testified that after mother told him that he was not David's father, he was able to take possession of David when the child was visiting an aunt. Defendant then took the child for genetic testing. The

3

results of this testing, defendant testified, confirmed he was not David's father.

The trial court refused to admit the results of defendant's paternity test to prove the truth of the matter asserted. The court reasoned that defendant had failed to offer evidence that the test complied with the Family Code's requirements (see §§ 7552, 7552.2) or to establish the test's chain of custody.

With respect to the June 11, 2012 VDOP, defendant testified that when a nurse at the hospital asked him to sign it, he did so under the belief that it was David's birth certificate. Defendant explained that no one at the hospital provided him any written information when presenting him with the VDOP and, had he known he was not David's father, he would not have signed it. Defendant nonetheless acknowledged his signature on the VDOP as well as the fact that the VDOP, at the top, identified itself as a " 'DECLARATION OF PATERNITY' " and admonished the reader to read both the first and the second page before completing it.[2] He also confirmed that his signature on the VDOP followed this statement: " 'I declare under the penalty of perjury under the laws of the State of California that I am the biological father of the child named on this declaration and that the information I have provided is true and correct. I have read and understand the rights and responsibilities described on the back of this form. I understand that by signing this form I am consenting to the establishment of paternity, thereby waiving those rights. I am assuming all of the rights and responsibilities as the biological father of this child. I wish to be named as the father on the child's birth certificate. I have been orally informed of my rights and responsibilities.' "

---

[2] While acknowledging the contents of the VDOP and his signature on it, defendant could not recall whether there was writing on the back of the form.

Lastly, defendant acknowledged instructions on the VDOP for its distribution: Specifically, the original white form was to go to the California Department of Child Support Services (DCSS), the yellow and pink copies to the parents, and the green copy to the local child support agency.

The trial court admitted a certified copy of the first page of the VDOP signed by defendant as the second page of exhibit 2. The first page of exhibit 2 was a request to the DCSS from defendant to obtain a copy of this VDOP. The court noted for the record that "[e]ven though Exhibit 2, the VDOP refers to the back of the form, there is no printing on the back of Exhibit 2 as presented at the long cause hearing." The court then submitted the matter for a decision.

On April 22, 2019, the trial court issued a statement of decision denying defendant's set aside motion. On May 2, 2019, defendant lodged objections to the court's April 22 order on the grounds that the trial court: (1) misconstrued his argument for setting aside the VDOP as based on Code of Civil Procedure section 473 and (2) erroneously relied on "Exhibit 3" which was not admitted as evidence. Following a June 3, 2019 hearing, the court stated its intent to issue an amended statement of decision.

Also in June 2019, the trial court realized that a court reporter's transcription of the first part of the May 22, 2018 hearing was missing. Accordingly, the court issued a sua sponte order on June 24, 2019, granting the parties the opportunity to request a copy of the missing transcript and, if necessary, to supplement any previous filings or arguments made to the court.

On August 26, 2019, the trial court issued its final statement of decision (hereinafter, August 26, 2019 order). The court noted in this order that neither party had filed a supplemental brief addressing the previously

5

missing hearing transcript.  The court then made the following findings: (1) the VDOP was valid and enforceable, meeting all legal requirements for providing notice to defendant of the legal implications of signing the VDOP and thereby consenting to the establishment of paternity over David; (2) the VDOP was properly filed with the DCSS; (3) defendant's request to set aside the VDOP was untimely; (4) defendant failed to prove that he signed the VDOP as a result of a material mistake of fact or a fraud committed by mother; and (5) defendant failed to prove the VDOP program violated his right to equal protection.

On October 7, 2019, defendant filed a timely notice of appeal of the August 26, 2019 order.[3]

## DISCUSSION

Defendant seeks to overturn the August 26, 2019 order, by which the trial court denied his motion to set aside the paternity judgment and VDOP, to order paternity testing, and to amend David's birth certificate to delete his name.  According to defendant, the trial court committed numerous errors when finding in this order that the time for setting aside the VDOP had expired and that his paternity over David had been established.  Specifically, he contends the court: (1) misapplied the statutory law governing the timeliness of motions to set aside a VDOP; (2) failed to hold the AC-DCSS to its burden of proving the existence of a valid VDOP; (3) improperly considered extra-record evidence, while ignoring "uncontroverted" evidence that the VDOP was a product of fraud and mistake; and (4) ignored the

---

[3] To clarify, defendant did not directly appeal the June 1, 2018 judgment ordering him to pay child support and health insurance for David. Rather, defendant has appealed the court's denial of his motion to set aside both the judgment and VDOP based on his assertion that paternity does not exist.

6

"inherent gender bias" of the VDOP program, which, he claims, violated his equal protection rights under the state and federal Constitutions.

The AC-DCSS responds that no grounds exist to reverse the August 26, 2019 order because: (1) defendant failed to prove fraud, duress or material mistake of fact as to his signing the VDOP; and (2) substantial evidence proved that the VDOP was valid because defendant received all necessary advisements before he signed it, and the VDOP was then properly filed with the DCSS.

We address these arguments to the extent appropriate after setting forth the applicable legal framework.

## I. *Standard of Review.*

"In reviewing a judgment based upon a statement of decision following a bench trial, we review questions of law de novo, and we review the trial court's findings of fact for substantial evidence. 'Under this deferential standard of review, findings of fact are liberally construed to support the judgment and we consider the evidence in the light most favorable to the prevailing party, drawing all reasonable inferences in support of the findings.' [Citation.]" (*Durante v. County of Santa Clara* (2018) 29 Cal.App.5th 839, 842 (*Durante*).)

## II. *California's Statutory Scheme Governing Parentage.*

In California, the "statutes governing dependency proceedings differentiate the rights of presumed, natural, and alleged fathers. [Citation.]" (*In re Liam L.* (2000) 84 Cal.App.4th 739, 745.) The Uniform Parentage Act (§ 7600 et seq.) "distinguishes between presumed and merely biological fathers. [Citation.] 'A biological or natural father is one whose biological paternity has been established, but who has not achieved presumed father status . . . . A man who may be the father of a child, but whose biological paternity has not been established, or, in the alternative, has not achieved

7

presumed father status, is an "alleged" father.' [Citation.]" (*Ibid.*) Relevant here, a presumption of paternity is created when an alleged father signs a VDOP. (§§ 7611, 7573, subd. (a); *In re Mary G.* (2007) 151 Cal.App.4th 184, 197–198.)

"Under section 7571, 'upon the event of a live birth, prior to an unmarried mother leaving any hospital, the person responsible for registering live births . . . shall provide to the natural mother and shall attempt to provide, at the place of birth, to the man identified by the natural mother as the natural father, a [VDOP] together with the written materials described in Section 7572. Staff in the hospital shall witness the signatures of parents signing a [VDOP] and shall forward the signed declaration to the [DCSS] within 20 days of the date the declaration was signed.' (§ 7571, subd. (a).) The written materials must inform the parents that once filed, a [VDOP] establishes paternity, and must also inform the father that by signing the voluntary declaration he is waiving the constitutional right to have paternity established by a court. (§ 7572, subd. (b).)" (*County of Los Angeles v. Sheldon P.* (2002) 102 Cal.App.4th 1337, 1340 (*Sheldon P.*).)

The presumption of paternity created by the signing of a VDOP is a conclusive presumption. Unless rescinded or set aside, a VDOP has the same force and effect as a judgment of paternity issued by a court of competent jurisdiction. (§ 7573, subd. (a); *Kevin Q. v. Lauren W.* (2009) 175 Cal.App.4th 1119, 1132 (*Kevin Q.*); *City and County of San Francisco v. Cartagena* (1995) 35 Cal.App.4th 1061, 1065–1068 (*Cartagena*) ["Numerous cases support giving conclusive effect to a judicial finding of paternity and bar the parties from using blood test evidence in a subsequent proceeding to overturn a paternity determination"]; see *De Weese v. Unik* (1980) 102 Cal.App.3d 100, 106–107.)

8

Section 7575 sets forth the circumstances under which a voluntary declaration may be rescinded or set aside. At the time the trial court heard defendant's set aside motion, subdivision (a) authorized either parent to rescind a VDOP within 60 days by filing a rescission form. (§ 7575, subd. (a).) Subdivision (b), in turn, authorized a court to set aside a VDOP when court-ordered blood tests established the declarant was not the child's father. (§ 7575, subd. (b); *Sheldon P., supra,* 102 Cal.App.4th at p. 1340.) As relevant here, subdivision (c)(1)[4] permitted either parent to "file an action or motion to set aside the [VDOP] on any of the grounds described in, and within the time limits [maximum of six months] specified in, Section 473 of the Code of Civil Procedure [relating to mistake, inadvertence, surprise, or excusable neglect]." (§ 7575, subd. (c)(1).) Last, subdivision (c)(4) provided that "[n]othing in this section is intended to restrict a court from acting as a court of equity." (§ 7575, subd. (c)(4).)

Effective January 1, 2020, several months after the trial court issued the challenged order, section 7575[5] was amended in order to, among other

---

[4] The version of section 7575, subdivision (c)(1) repealed effective January 1, 2020, provided: "Nothing in this chapter shall be construed to prejudice or bar the rights of either parent to file an action or motion to set aside the [VDOP] on any of the grounds described in, and within the time limits specified in, Section 473 of the Code of Civil Procedure. If the action or motion to set aside a judgment is required to be filed within a specified time period under Section 473 of the Code of Civil Procedure, the period within which the action or motion to set aside the [VDOP] must be filed shall commence on the date that the court makes an initial order for custody, visitation, or child support based upon a [VDOP]."

[5] As amended, section 7575 provides: "(a) Either parent may rescind the voluntary declaration of parentage by filing a rescission form with the [DCSS] within 60 days of the date of execution of the declaration by the attesting parents, whichever signature is later, unless a court order for custody, visitation, or child support has been entered in an action in which the signatory seeking to rescind was a party. The [DCSS] shall develop a

9

things, modify the procedures and requirements under which a VDOP may be established and challenged. (Stats. 2018, ch. 876, § 38.) In its current form, section 7575 no longer delineates any grounds for rescinding a VDOP after 60 days. Instead, the more limited grounds for rescission are set forth in the newly enacted section 7576, subdivision (a), which provides: "After the period for rescission provided in Section 7575 expires, but not later than two years after the effective date provided in subdivision (c) of Section 7573 of a voluntary declaration of parentage, a signatory of the voluntary declaration of parentage may commence a proceeding to challenge the declaration on the basis of fraud, duress, or material mistake of fact." (§ 7576, subd. (a), added by Stats. 2018, ch. 876, § 40.)

AC-DCSS argues that the new version of section 7575 should apply for purposes of this appeal, citing *In re Marriage of Fellows* (2006) 39 Cal.4th 179 (*Fellows*). This California Supreme Court case held that when a new provision of the Family Code is enacted while a matter is pending, generally speaking, the new provision applies as of its effective date. (*Id.* at p. 186.) As

---

form to be used by parents to rescind the declaration of parentage and instructions on how to complete and file the rescission with the [DCSS]. The form shall include a declaration under penalty of perjury completed by the person filing the rescission form that certifies that a copy of the rescission form was sent by any form of mail requiring a return receipt to the other person who signed the voluntary declaration of parentage. A copy of the return receipt shall be attached to the rescission form when filed with the [DCSS]. The form and instructions shall be written in simple, easy to understand language and shall be made available at the local family support office and the office of local registrar of births and deaths. The department shall, upon written request, provide to a court or commissioner a copy of any rescission form filed with the department that is relevant to proceedings before the court or commissioner.

"(b) This section shall become operative on January 1, 2020." (§ 7575, added by Stats. 2018, ch. 876, § 38.)

the high court explained, "by its terms, section 4, subdivision (c), establishes that amendments to the Family Code apply retroactively unless otherwise provided by law. [¶] . . . [A]s a general rule, future changes to the Family Code apply retroactively."[6] (*Ibid.*)

In *Fellows*, however, the California Supreme Court made clear the general rule of retroactivity in section 4, subdivision (c) is subject to exceptions delineated in subdivisions (d) through (h). The court then considered and rejected the appellant's argument that the trial court erred in retroactively applying a new law based on the statutory exceptions set forth in subdivisions (f) and (g). (*Fellows, supra*, 39 Cal.4th at pp. 187–188.)

Here, to the contrary, one of the statutory exceptions to section 4, subdivision (c)'s general rule of retroactivity squarely applies. Under subdivision (e), where, as here, "an order is made before the operative date [of the new law], or an action on an order is taken before the operative date, the validity of the order or action is governed by the old law and not by the new law." (§ 4, subd. (e).)

In *Heikes*, the California Supreme Court briefly considered whether a newly amended law or the previous version of the law governed in an appeal of a trial court order granting a new trial in a marital dissolution action. (*Heikes, supra*, 10 Cal.4th at p. 1214, fn. 1.) Our high court held: "Because the trial court's judgment in the present case was entered before January 1, 1994, the operative date of the Family Code, its validity is governed by

---

[6] Section 4, subdivision (c) provides: "Subject to the limitations provided in this section, the new law applies on the operative date to all matters governed by the new law, regardless of whether an event occurred or circumstance existed before, on, or after the operative date, including, but not limited to, commencement of a proceeding, making of an order, or taking of an action."

11

statutory provisions then in force, including [Civil Code] sections 4800.1 and 4800.2. (Fam. Code, § 4, subd. (e).)" (*Ibid.*)

The holding of *Heikes*, not *Fellows*, applies here. Because the trial court's August 26, 2019 order was issued before the operative date of the 2020 amendment to section 7575, the order's validity is governed by the version of section 7575 in force at the time of the trial court's order.[7]

## III. *AC-DCSS concedes the court incorrectly determined defendant's set aside motion was untimely.*

Defendant contends the trial court erred by misapplying the statutory provisions governing the timeliness of his set aside motion. This is a legal issue reviewed de novo. (*Durante, supra*, 29 Cal.App.5th at p. 842.)

The trial court found defendant's set aside motion was untimely because "[m]ore than two years have passed since the VDOP was signed on June 11, 2012." As both parties acknowledge, section 7575, subdivision (c)(1) governs the timeliness of defendant's motion. This provision provides: "Nothing in this chapter shall be construed to prejudice or bar the rights of either parent to file an action or motion to set aside the voluntary declaration of paternity on any of the grounds described in, and within the time limits specified in, Section 473 of the Code of Civil Procedure. If the action or

---

[7] AC-DCSS's request for judicial notice, filed March 17, 2020, of three exhibits, exhibits B through D, relating to the legislative history of the 2020 amendments to the Family Code provisions governing parentage, including section 7575, is denied. We make this decision based on our holding, set forth above, that the version of section 7575 in effect when the trial court entered its August 26, 2019 order, rather than the new version effective January 1, 2020, applies on appeal. We grant AC-DCSS's request for judicial notice of exhibit A, a copy of our court's docket in appeal No. A157193, an appeal arising from the same underlying case that was dismissed without prejudice pursuant to the parties' stipulation on July 19, 2019. (Evid. Code, § 452, subd. (d).)

motion to set aside a judgment is required to be filed within a specified time period under Section 473 of the Code of Civil Procedure, the period within which the action or motion to set aside the [VDOP] must be filed shall commence *on the date that the court makes an initial order for custody, visitation, or child support based upon a [VDOP].*" (§ 7575, subd. (c)(1), italics added.)

Based on this statutory language, AC-DCSS concedes the trial court erred in finding that defendant's set aside motion was untimely because it was filed over two years after he signed the VDOP. AC-DCSS explains that under section 7575, subdivision (c), "the deadline to file for relief 'shall commence on the date that the court makes an initial order for . . . child support based upon a [VDOP].'" Here, defendant filed his motion "on August 10, 2018, or just over two months after the trial court issued the [June 1, 2018] child support order based on the VDOP," which is within the statutory period.

We agree with AC-DCSS's analysis. "Code of Civil Procedure section 473, subdivision (b), requires that a motion under that statute be filed 'within a reasonable time, in no case exceeding six months, after the judgment, dismissal, order or proceeding was taken.' Section 7575 provides that on motions to set aside a voluntary declaration, the Code of Civil Procedure section 473 timetable begins to run 'on the date that the court makes a finding of paternity based upon the [VDOP] in an action for custody, visitation, or child support.' (§ 7575, subd. (c)(1).)" (*Sheldon P., supra*, 104 Cal.App.4th at p. 1346.) Defendant complied with these rules by filing his set aside motion on August 10, 2018, well within the six-month time period commencing on the date that the trial court entered the June 1, 2018

13

judgment affirming paternity and ordering him to pay child support based on the VDOP.[8]

## IV. *Substantial evidence supports the August 26, 2019 order.*

Defendant next challenges the August 26, 2019 order on several evidentiary grounds. First, defendant contends AC-DCSS failed to meet its burden to prove that it filed a valid VDOP in accordance with sections 7572 through 7574. Second, he contends the court disregarded his "uncontroverted" evidence that the VDOP was based on a material mistake of fact or fraud—mainly, his alleged negative paternity test. Third, he contends the court improperly relied upon exhibit 3,[9] which was proffered but not admitted into evidence, and failed to consider his supplemental points and authorities filed on July 22, 2019. We address these arguments in turn below.

---

[8] Defendant raises an additional argument that the trial court failed to comply with various federal statutes governing the timeliness of motions to set aside VDOP's. However, defendant fails to explain why a federal statute should prevail over section 7575 (which, oddly, he agrees is applicable) for the purpose of determining the timeliness of his set aside motion. The trial court did not address this issue in its order. However, the law is well established that federal law preempts state law only where there is a " 'clear and manifest purpose of Congress' " to foreclose a particular field to state legislation. (*Jones v. Rath Packing Co.* (1977) 430 U.S. 519, 525.) Because defendant has not attempted to demonstrate any clear or manifest purpose of Congress to foreclose state legislation restricting the deadlines for rescinding a VDOP, we conclude his reliance on federal law to prove error on appeal is unavailing. (See *Sheldon P., supra*, 102 Cal.App.4th at p. 1347.)

[9] Exhibit 3 is a four-page sample VDOP form with attached advisements. The court noted in its original April 22, 2019 statement of decision that it had not been established that the format of exhibit 3, as presented in court, is identical to the format that was presented to defendant at the hospital.

14

## A.    AC-DCSS established the VDOP's validity.

We first address defendant's claim that AC-DCSS failed its burden to prove the VDOP in this case met the legal requirements set forth in sections 7572 through 7574. Generally speaking, these provisions govern the informational content and filing of a VDOP. "Under section 7574, a valid declaration of paternity must be signed by both a mother and the man she identifies as her child's 'only possible father.' (§ 7574, subd. (b)(5).) The declaration of paternity must contain, inter alia, a statement by the father that he understands he is waiving his constitutional right 'to have the issue of paternity decided by a court' (§ 7572, subd. (b)(3)); 'that he is the biological father of the child; and that he consents to the establishment of paternity' (§ 7574, subd. (b)(6))." (*Kevin Q., supra*, 175 Cal.App.4th at p. 1131.)

Looking closely at these provisions, section 7572 requires written materials to be attached to the VDOP form advising parents of the following: (1) a signed VDOP filed with the DCSS legally establishes parentage; (2) the establishment of parentage creates legal rights and obligations for both parents and the child; (3) an alleged father has certain constitutional rights, including to have the issue of parentage decided by a court, to receive notice of any hearing on the issue of parentage, to have an opportunity to present his case to the court and to present and cross-examine witnesses, to be represented by counsel, and to have counsel appointed if he cannot afford one in a parentage action filed by a local child support agency; and (4) that by signing the VDOP the alleged father thereby voluntarily waives these constitutional rights. (§ 7572, subd. (b).) Parents are also entitled to oral notice of the rights and responsibilities specified above. (*Id.*, subd. (c).)

Section 7574, in turn, imposes a legal duty on the DCSS to develop a VDOP form, in conjunction with the State Department of Health Services and other interest groups, that contains certain basic information. (§ 7574, subds.

15

(a)–(b).)  Most significant for our purposes, this form must, when relevant, include a statement by the father that he has read and understands the written materials described in section 7572, that he understands that by signing the VDOP he is waiving his rights as described in the written materials, that he is the biological father of the child, and that he consents to the establishment of paternity by signing the VDOP.[10]  (§ 7574, subd. (b)(6).) Section 7573 then provides that, subject to specific exceptions, a completed VDOP, as described in section 7574, that has been filed with the DCSS "shall establish the paternity of a child and shall have the same force and effect as a judgment for paternity issued by a court of competent jurisdiction."  (§ 7573, subd. (a).)

In our case, the trial court found that the VDOP in exhibit 2 met these statutory requirements.  As previously explained, exhibit 2 is a two-page document, the first page of which is a request by defendant to obtain a copy of the VDOP from the DCSS.  The second page is the first page of the VDOP itself, stamped as a certified copy and bearing defendant's signature.  We agree with the trial court that "[c]learly, the VDOP is on file," as required by

---

[10] Section 7574 requires the DCSS-developed form to contain, inter alia, the following information: (1) the name and the signature of the woman who gave birth; (2) the name and the signature of the person seeking to establish parentage; (3) the child's name and date of birth; (4) a statement by the mother that she has read and understands the written materials described in section 7572, that the man who has signed the VDOP is the only possible father, and that she consents to the establishment of paternity by signing the VDOP; (5) a statement by the father that he has read and understands the written materials described in section 7572, that he understands that by signing the VDOP he is waiving his rights as described in the written materials, that he is the biological father of the child, and that he consents to the establishment of paternity by signing the VDOP; and (6) the name and signature of the person who witnesses the signing of the VDOP.  (§ 7574, subd. (b)(1)–(7).)

16

section 7573, given that "[defendant] obtained Exhibit 2, the VDOP, from DCSS." (See *Kevin Q., supra*, 175 Cal.App.4th at p. 1136 ["The *certified* copy of [a VDOP] leaves no doubt it was submitted to the [DCSS]"]; *In re Raphael P.* (2002) 97 Cal.App.4th 716, 738 [Evid. Code, § 664's presumption that " 'official duty has been regularly performed' " includes proper filing of VDOP].)  Defendant offers no contrary evidence.

Moreover, defendant admits signing the VDOP, even while maintaining that he thought the document was David's birth certificate and that he received no information advising him otherwise.  In so arguing, defendant notes that the VDOP in exhibit 2 has no writing on the back of it.  At the hearing, defendant testified that he did not recall whether there was any writing on the back of the VDOP or whether any " 'papers' " were given to him at the hospital when he was presented with the form.  He also testified that no one at the hospital advised him of his rights or obligations under the VDOP.

The trial court found that defendant's testimony did not undermine the VDOP's validity.  We agree.  The VDOP in exhibit 2 states in bold print on the first page, "**DECLARATION OF PATERNITY**," and, "***READ PAGE 1 AND 2 BEFORE COMPLETING***."  There is also a declaration on the VDOP's first page, which defendant voluntarily signed, that states, inter alia, that he is the biological father of David; that he "read and understand[s] the rights and responsibilities on the back of this form"; and that he "understand[s] that by signing this form [he is] consenting to the establishment of paternity, thereby waiving those rights."  (Italics omitted.)  Further, despite defendant's testimony that the hospital representative failed to inform him of his rights or obligations before he signed the VDOP (see § 7572, subd. (c)), this declaration states the opposite—that the undersigned

17

(defendant) was "orally informed of [his] rights and responsibilities." (Italics omitted.)

Given this evidence, the trial court was entitled to reject any and all of defendant's testimony that was inconsistent with his statements made under penalty of perjury when signing the VDOP. (*Durante, supra*, 29 Cal.App.5th at p. 842; *In re Carpenter* (1995) 9 Cal.4th 634, 646 ["The power to judge the credibility of witnesses and to resolve conflicts in the testimony is vested in the trial court, and its findings of fact, express or implied, must be upheld if supported by substantial evidence"].) Accordingly, the court's determination that the VDOP is valid stands.

## B. Defendant failed to prove fraud or material mistake of fact.

Defendant next contends the evidence of mother's fraud was "uncontroverted," pointing to his paternity test result and her alleged statements to him that she had been intimate with no one else. "Under certain limited circumstances a court, sitting in equity, can set aside or modify a valid final judgment obtained by fraud, mistake, or accident." (*Cartagena, supra*, 35 Cal.App.4th at p. 1066.) "The type of fraud necessary to vacate a final judgment is extrinsic fraud, not fraud which is intrinsic to the trial of the case itself. [Citation.] Extrinsic fraud occurs when a party is deprived of the opportunity to present his claim or defense to the court; where he was kept ignorant or, other than from his own negligence, fraudulently prevented from fully participating in the proceeding." (*Id.* at p. 1067.) Moreover, "in demonstrating extrinsic fraud, it is insufficient for a party to come into court and simply assert that the judgment was premised upon false facts. The party must show that such facts could not reasonably have been discovered prior to the entry of judgment." (*Id.* at p. 1068; see *County of Orange v. Superior Court* (2007) 155 Cal.App.4th 1253, 1261 [affirming trial

18

court's denial of father's motion to set aside the paternity judgment where, even if the allegations in the motion were true, "extrinsic fraud [was not] sufficiently alleged"].)

Applying these principles, we reject father's claim that "uncontroverted" evidence proved the VDOP was a result of fraud or material mistake of fact. As an initial matter, the report of defendant's paternity test was not admitted for the truth of the matter asserted because, as the court found, defendant offered no evidence to prove the test's chain of custody or to prove the testing procedure complied with applicable Family Code requirements. Defendant has never challenged the validity of this evidentiary ruling, and we therefore accept it here without discussion. We note, in any event, that " '[paternity] blood tests are directed to the ultimate issue, paternity. *They will reveal nothing about whether extrinsic fraud was practiced upon* [*the alleged father*] *or whether there was some extrinsic mistake.*' [Citation.]" (*Cartagena, supra*, 35 Cal.App.4th at p. 1068, original italics.)

Moreover, the record contains no other evidence of fraud or material mistake of fact. Defendant testified that mother repeatedly told him he was the only possible father. However, he offered no evidence that mother knew with certainty at the time he signed the VDOP that someone else was David's father, much less that she intentionally told him or lured him into believing otherwise in order to secure his signature. Indeed, defendant testified that he repeatedly asked mother, before and after David's birth, whether it was true that he was the father, evidencing his doubts as to her claim. Yet, notwithstanding these apparent doubts, defendant signed the VDOP at the hospital, thereby establishing his paternity, without insisting on a paternity test or any other demonstration by mother that he was in fact David's father.

19

## C.    Procedural errors did not taint the August 26, 2019 order.

Finally, we reject defendant's remaining claims regarding exhibit 3 and his July 22, 2019 supplemental points and authorities. The trial court, in its August 26, 2019 order, acknowledged that it had inappropriately considered exhibit 3 when it issued the original statement of decision on April 22, 2019. The court then confirmed for purposes of its amended statement of decision that "a subsequent review of the evidence, excluding exhibit 3, also does not change the court's ruling." Accordingly, defendant is mistaken that the court erroneously considered this exhibit when issuing its August 26, 2019 order.

With respect to the court's apparent disregard of defendant's July 22, 2019 supplemental points and authorities, which were filed to address a previously missing transcript that had been located and made available to the parties, we again find no reversible error. Our own review of defendant's filing, as well as the missing transcript, reveals that defendant raised no new argument and presented no new evidence that had not previously been presented to and considered by the court.[11] Accordingly, even assuming the court's omission in this regard were erroneous, defendant suffered no harm as a result.

## V.    *No violation of equal protection was established.*

Last, defendant contends his constitutional right to equal protection was violated because the official VDOP form, on which he attested to his

---

[11] In his supplemental brief, defendant argued, as he does here, that AC-DCSS failed its burden to prove that a valid VDOP exists. The supplemental transcript, in turn, merely reflects that, on May 22, 2018, defendant, representing himself, testified as to mother's statements to him that he was not David's father, and regarding the paternity test he took to confirm this fact.

paternity, is inherently gender-biased against males.  Defendant reasons that only a mother could definitively know the identity of her child's father.

As AC-DCSS notes, however, defendant's constitutional argument is unclear and fails to address the fact that under sections 7572 through 7575, a mother and father assume the same rights and responsibilities upon signing the VDOP and thereby establishing parentage.  Indeed, in his opening brief, defendant identifies no disparate treatment that he allegedly suffered under the statutory VDOP program.  Further, despite AC-DCSS's response to his argument, defendant neglects this issue altogether in his reply brief.  For these reasons, we conclude defendant forfeited his equal protection challenge on appeal.  (See *Fernandes v. Singh* (2017) 16 Cal.App.5th 932, 942–943 ["a brief must contain ' "meaningful legal analysis supported by citations to authority and citations to facts in the record that support the claim of error" ' and contain adequate record citations, or else we will deem all points 'to be forfeited as unsupported by "adequate factual or legal analysis" ' "].)

## DISPOSITION

The trial court order of August 26, 2019, is affirmed.

_____
Jackson, J.

WE CONCUR:

_____
Siggins, P. J.


_____
Fujisaki, J.